Louis D. Laurino, S.
In this proceeding to determine the validity of a right of election, the petitioning executor moves for an order pursuant to CPLR 3212, summarily determining that the right of election is invalid.
The testator died on April 3, 1973, and his will was admitted to probate on June Í4, 1973. A notice of election dated July 3, 1973 was duly filed by the respondent, decedent’s surviving spouse, pursuant to EPTL 5-1.1. Petitioner rejected the notice of election and moves to strike the notice on the grounds that the respondent on November 29, 1965, duly executed an agreement, in accordance with EPTL 5-1.1 (subd. [f]), waiving all rights which she might have to elect to take against any last will and testament of the decedent. In her answer, the respondent does not deny the due execution and effect of the November *158 29,1965 agreement, but raises as her only defense the execution of an alleged “ marriage contract ” entered into between the decedent and herself on March 29, 1966. It is her contention that the said contract abrogated and voided the antenuptial agreement of November 29, 1965, and that according to the terms of the contract she is entitled to her intestate share and/or her full right of election.
The decedent and the respondent were married on March 29, 1966, pursuant to a religious ceremony in accordance with Jewish law. As a part of the ceremony, they executed the marriage contract in question, known as a “ Ketubah ”. The pertinent parts of the “ Ketubah ” provide for the payment to the respondent “ in view of thy widowhood ”, of “ 100 zuzim ”, and that this obligation shall pass to the decedent’s estate. The respondent contends that these provisions abrogate the antenuptial agreement; that “zuzim” have no monetary value of any kind, but represent the intestate share to which the widow would be entitled under EPTL 5-1.1. In support of this construction the surviving spouse submits an affidavit of Rabbi Josiah Derby who officiated at the marriage ceremony in question. He states that the “ Ketubah ” was read to both the decedent and the surviving spouse, and, while read in Aramaic, that the decedent clearly understood the contents of the “ Ketubah ”. Most importantly, he states at page 4 of his affidavit“ The Ketubah in this case having been executed in today’s times, must necessarily be interpreted under today’s laws and applying the Jewish legal axiom ‘ The Law of the land is the law ’, the Jewish Law says that the widow is entitled to that which the law of the land (New York State) allows her.”
Petitioner, on the other hand, contends that, assuming the agreement is in any way binding, the decedent’s only obligation under the agreement was to provide his widow with “ 100 zuzim ”, and that the surviving spouse having conceded the receipt by her, as joint tenant, of 200 shares of Occidental Petroleum Corporation, 100 shares of Asamera Oil Corporation and 100 shares, of G-ulf & Western Corporation, has already received more than the present value of “ 100 zuzim”. Petitioner further contends that there is no language revoking the antenuptial agreement, and that the terms of the “ Ketubah ” are not in conflict with it.
It is the opinion of this court, after giving particular consideration to the above quote from Rabbi Derby’s affidavit, that the “ Ketubah ”, or Jewish marriage contract, has no binding effect on the property rights of the signers under the laws of the State *159 of New York. (See Wener v. Wener, 35 A D 2d 50, 54.) No contractual rights are given to the surviving spouse under the terms of the Ketubah which would effectuate a revocation of the agreement of November 29, 1965.
George Horowitz, in his recent book ‘1 The Spirit of Jewish Law ”, after noting that the value of a “ zuz ” is estimated at about 15 cents, a sum which in ancient times was a considerable amount, stated: “ In modern times, especially in the more civilized countries where the law of the land protects married women with respect to their property rights, the ketubah as a bond of indebtedness has become almost obsolete. Certainly, where the amount of that bond is merely the ancient statutory minimum of 200 zuz (valued at about 30 dollars), it is not taken seriously as a burden or charge on the husband’s estate. Moreover, practically nowhere does the law of the land accord to the Rabbinical ketubah the force of a lien on the husband’s property, real or personal. Thus, even for the observant and the orthodox, the ketubah has become more a matter of form and a ceremonial document than a legal obligation. The ketubah in our times serves to make the marriage a ‘ religious ’ ceremony rather than a mere ‘ civil ’ contract. It recalls also ancient and hallowed memories of a time when the Jews constituted a people with a distinctive body of their own laws. ’ ’ (G. Horowitz, The Spirit of Jewish Law, § 176.)
Accordingly, petitioner’s motion is granted. The court finds that the surviving spouse validly waived her right to share in this estate by the agreement dated November 29,1965, and said agreement is a bar to her right of election.