OPINION OF THE COURT
Louis Grossman, J.
The case before this court is one of first impression. The basic facts are not in dispute. Plaintiff, Victoria Lee Davidson, formerly known as Henry Dee Sampler, was employed by Oxford Chemicals, a Georgia concern, which is a division of Consolidated Foods Corp. In 1975-1976, during the course of his employment, Sampler, a transsexual, sought treatment for gender dysphoria, a psychological condition commonly known as transsexualism, whereby a person demonstrates dissatisfaction with their sex at birth.
On February 2, 1976, Dr. Michael S. Baggish treated plaintiff for his condition billing plaintiff’s employer, Oxford Chemicals, for a comprehensive consultation and examination. Because of plaintiff’s existing condition it was ultimately decided that plaintiff should undergo sex-reassignment surgery. The plaintiff, who has legally changed his name, has already undergone a series of preliminary hormone treatments, necessary for the actual sex change operation.
Plaintiff’s employer, Consolidated Foods, a nonparty to this action, had, at the time of his employment, an employee benefit plan underwritten and administered by the Aetna Life & Casualty Insurance Co., which in pertinent part provided plaintiff with certain medical insurance protection. The insurance policy provides for the following: "Cosmetic Surgery-Any of the listed expenses incurred in connection with cosmetic surgery will be considered Covered Medical Expenses only if the cosmetic surgery is necessary for the repair of a nonoccupational injury which occurs while the family member is covered for this benefit”.
The affidavit of Aetna’s senior superintendent, life and health division, John G. McTigue, cites this very clause as justification for defendant’s refusal to bear plaintiff’s medical expenses, alleging the following:
*3 1- That gender dysphoria is not an injury.
2- That the transsexual surgery as described by its proponents is cosmetic in nature.
3- Citing the affidavit of Dr. William Guillette, medical director of Aetna Life & Casualty, that "surgical intervention is not necessary and is unreasonable”.
Plaintiff now brings this action for a declaratory judgment on this very issue, whether the surgical treatment recommended by plaintiff’s physicians is covered by defendant Aetna’s employee benefit plan as a necessary medical expense, or is the medical treatment rendered precluded from coverage due to it being purely cosmetic in nature?
In order for this court to reach an informed and knowledgeable decision on this matter an extensive reading of applicable literature was required. Transsexualism, as defined in the case of Doe v State Dept. of Public Welfare (257 NW2d 816, 818, 819 [Minn]) and by the Appellate Division, Superior Court of New Jersey, in the case of M-T v J-T (A-1669-74), is one who has a conflict between physical anatomy and psychological identity or psychological sex. The medical term for such an illness, as found in the affidavit of Dr. Charles Ihlenfeld, a dual specialist in the fields of psychiatry and endocrinology, and a noted expert in the field of transsexualism, is gender dysphoria syndrome. The Harry Benjamin International Gender Dysphoria Association, which published in February, 1979 a standard of care manual for gender dysphoric patients, defines gender dysphoria as that psychological state whereby a person demonstrates dissatisfaction with their sex at birth, and the sex role, as socially defined, which applies to that sex and, who as a result requests hormonal and surgical sex-reassignment.
According to Michael S. Baggish, M. D., president of the Gender Identity Clinic of New England, and chief of obstetrics and gynecology at Mt. Sinai Hospital, Hartford, Connecticut: "Transsexualism used to be attributed entirely to psychological disturbance. More current theories suggest that an inconsistency in the so-called psychosexual brain center causes gender to be perceived as opposite to the morphology of the sexual apparatus. These theories postulate a brain center that is a dimophic structure and passes through periods of differentiation analagous to those of the genitalia. In transsexualism, there is a flipover; the result is differentiation of the psycho-sexual center opposite to that of the genital apparatus and sex *4 chromosomes”. (Michael S. Baggish, M. D., Testing and treating sex change candidates, Contemporary OB/GYN, vol 12, 9/ 78, pp 83-97).
The over-all process of sex-reassignment surgery is both long and arduous. John Hopkins Hospital, which performs sex-reassignment surgery, has a Gender Identity Clinic. The clinic is operated by several physicians from various disciplines including psychiatrists, psychologists, plastic surgeons, endocrinologists, urologists, gynecologists and obstetricians. Among the requirements for admittance to the John Hopkins Clinic is that the patient has lived in the female role for a minimum of one year, proving to her own satisfaction and to others her ability to be rehabilitated gainfully in society as a female and to function satisfactorily emotionally, vocationally and socially as a female without a vagina although possibly hormonally estrogenized. Further requirements include that the patient be unmarried and that a responsible member of the family, parents if possible, be completely aware of the situation and disposed to indorse the possibility of surgical sex-reassignment.
The clinic further states that the operation cannot be looked upon as a sex change operation, rather it is simply the final anatomical step in a gender role assimiliation of which the psychologic and social steps already have been carried out. All other manipulations during the trial period are reversible in contrast with surgical sex reassignment.
The surgical procedure itself is no less pronounced. The testes are removed and the available tissue of the scrotum and penis molded to form the lining of a vaginal cavity. Through this procedure, the woman will eventually be able to achieve orgasm, but will not however be able to bear children. Some transsexuals undergo further surgery, including but not limited to augmentation, mammonplasty, rhinoplasty, and plastic surgery, designed to reduce the size of the larnyx, increase the size of the hips, etc.
Defendant Aetna Life & Casualty Insurance Co. provides meager opposition to plaintiffs motion. Its medical director, Dr. William Guillette, whose affidavit was submitted on this case, is eminently qualified to practice medicine, but nevertheless, lacks expertise on the subject of gender dysphoria and transsexualism. He maintains that there is nothing physically wrong with a transsexual’s body, the problem, rather, being purely mental. Because it appears impossible to change the *5 mind to fit the body, the surgery is aimed at changing the body to fit the mind.
For this court to suggest alternative remedies or treatment for this procedure would interfere with the professional judgment of medical experts, and would be beyond the scope of this court’s expertise or jurisdiction. Cosmetic surgery is surgery which is deemed optional or elective. The papers submitted herein on behalf of the plaintiff indicate that in order for the plaintiff to live a normal life, sex-reassignment surgery is imperative and necessary.
The surgery, which is lengthy, requires extensive modification and realignment of the human body. It is requested rarely, and done even more infrequently. It is performed to correct a psychological defect, and not to improve muscle tone or physical appearance.
While many seem appalled at such surgery, it nevertheless has demonstrated proven benefits for its recipients, although psychological in nature.
From all of the above the court concludes that the treatment and surgery involved in the sex change operation of the plaintiff is of a medical nature and is feasible and required for the health and well-being of the plaintiff.
The same cannot be considered to be of a strictly cosmetic nature.
Accordingly, the court finds that the defendant Aetna Life & Casualty Insurance Co. is responsible for all medical expenses incurred by plaintiff herein as a result of her undergoing sex reassignment.
The court does not deem the said operation to be cosmetic surgery, as defined by the policy in question.
Therefore, the plaintiff is entitled to the judgment sought herein.