OPINION OF THE COURT
Joanna Seybert, J.
The novel issue presented is:
Can an insurer be required to provide additional or supplemental benefits based upon an individual insured’s religious beliefs or practices?
facts
Plaintiff employee and his wife, a covered dependent, have *666 group health insurance under the New York State Government Employees Health Insurance Plan (hereinafter the Plan), which was previously provided by Metropolitan Insurance and currently is provided by Empire. There is no dispute that plaintiff and his wife were, at all relevant periods, covered by the Plan. They seek $532 in damages, the cost of a manually operated wheelchair for Mrs. Wachtel, which defendant insurance carrier has refused to reimburse the plaintiff for under its major medical service provision.
At a trial before this court in the Small Claims Part, the following facts were either elicited or stipulated to between the plaintiff appearing pro se and counsel for the defendant:
Mrs. Wachtel is a victim of multiple sclerosis and that degenerative disease totally confines her to a wheelchair on a permanent basis. She cannot manually operate a wheelchair and an electric or motorized wheelchair was provided by the defendant in April 1985. Plaintiff established that his wife, Carrie R. Wachtel, has a "medical necessity for an electric or motorized wheelchair in that [the chair will] enable Carrie to assume her responsibilities at home,” and "is especially well suited to meet Carrie’s needs because of her inability to operate a wheelchair manually since fatigue is the major incapacitating symptom of her illness, without this vehicle, Carrie would otherwise remain homebound and chair confined”. Plaintiff was reimbursed for the cost of that motorized wheelchair.
Plaintiff and his wife are members of the Young Israel of West Hempstead Congregation and observe the tenets of the Orthodox tradition which, inter alia, precludes the plaintiff or Mrs. Wachtel’s use of motorized vehicles on the Jewish Sabbath (Saturday). Mrs. Wachtel must be physically carried by her family on the Sabbath since as her rabbi states, "She is not permitted to use a motorized vehicle * * * but a manually operated wheelchair would permit her to be moved around the home with assistance.” Mr. Wachtel is not employed on the Sabbath and a manually operated wheelchair would eliminate the necessity of carrying his wife throughout the day.
The motorized wheelchair cannot be operated manually, i.e., it cannot be disconnected and pushed. However, defendant maintains that the motorized chair has met the standard of "medically necessary” as defined by itself[1] and if plaintiff fails *667 to avail himself or his wife of this equipment, the defendant Plan should not be penalized. Furthermore, defendant argues that to grant the relief requested herein would cause all health insurance providers to be inundated with pseudo-medical claims based upon religious beliefs.
DISCUSSION
The rights of the parties, the insured and the insurer, are governed by the then underlying contract (68 NY Jur 2d, Insurance, § 552), and absent contrary constitutional or statutory provisions and administrative regulations, an insurer even of personal, group insurance is permitted to limit the amount and conditions of liability. Such contracts will be limited only by "positive law” and by public policy considerations. (1 Appleman, Insurance Law and Practice §§ 1, 42.)
While Federal and State Constitutions[2] guarantee religious freedom and separation of church and State, generally an insurer’s actions[3] cannot be deemed "State actions” for purposes of civil rights actions under 42 USC § 1983. (Blum v Yaretsky, 457 US 991 [1982]; Jackson v Metropolitan Edison Co., 419 US 345 [1974]; cf., Coos Bay Care Center v State of Ore., Dept. of Human Rights, 803 F2d 1060.)
Insurance Law § 2606 (a) (1) provides in pertinent part that an insurer shall not: "[m]ake any distinction or discrimination between persons as to the premiums or rates charged for insurance policies or in any other manner whatever.” If the manual wheelchair is "medically necessary” as stated by Dr. Levy, then it follows that the motorized chair is not functional one day a week, because of Mrs. Wachtel’s religious beliefs. The defendant is placed in the unenviable position of violating this section, if it distinguishes or recognizes the validity of Mrs. Wachtel’s beliefs and provides an additional benefit not afforded to non-Orthodox Jews or, if it discriminates against Mrs. Wachtel by refusing to provide a wheelchair that is functional and in compliance with Mrs. Wachtel’s religious requirements.
Although the freedom to believe is absolute, the freedom of *668 free exercise of religion is not. (Cantwell v Connecticut, 310 US 296 [1940]; La Rocca v Lane, 37 NY2d 575, cert denied 424 US 968.) While the courts can sympathize with an individual’s needs that arise from their religious beliefs, the law mandates that these needs be fulfilled by the individual or that assistance be rendered by the appropriate religious organization (Matter of Stark v Wyman, 59 Misc 2d 504 [refusing additional welfare allowance for kosher foods]). The courts must refrain from applying religious law where an individual is at liberty to exercise their religious beliefs. (Wener v Wener, 35 AD2d 50 [2d Dept 1970]; cf., United States v Kahane, 396 F Supp 687 [ED NY 1975].) In Wener (supra, at 819) the Second Department criticized the trial court’s reliance on Jewish law as an alternative ground to afford child support and points out that the application of religious law would raise grave constitutional problems of equal protection and separation of State. Nor would every court be well versed in interpreting ancient codes that would often conflict with American jurisprudence. (See, Matter of White, 78 Misc 2d 157 [Sur Ct, Queens County 1974]; Comment, Ketuba as Grounds for Child Support Claim Notwithstanding Lack of Formal Adoption Proceeding, 15 NY L Forum 973.) Based upon this analysis, Mrs. Wachtel cannot be granted an additional benefit based solely on her religious needs.
Policy provisions that are clear and suspectible to only one interpretation, i.e., not ambiguous, must be enforced and the courts cannot vary the contract to accomplish some notion of "abstract justice.” (2 Couch, Insurance § 15:83 [2d ed]; Breed v Insurance Co., 46 NY2d 351 [1978].) In Breed v Insurance Co. (46 NY2d 351, 352, 355, supra) coverage was specifically defined and excluded theft by a tenant of " 'described premises’ ”, and absent any ambiguity the contract could not be construed against the insurer.
Generally, exclusions which are specifically defined in clear, definite, restrictive terms are enforced (Caporino v Travelers Ins. Co., 62 NY2d 234 [1984] [denying accidental death benefits for missing insured, when policy required proof of an external wound]; Government Employees Ins. Co. v Kligler, 42 NY2d 863 [1977] [denying auto coverage when policy limited to " 'temporary substitute’ ” or " 'non-owned’ vehicle” and insured’s wife’s owned vehicle involved]; Zuckerberg v Blue Cross & Blue Shield, 108 AD2d 56, 61, affd 67 NY2d 688 [1986] [denying treatment of cancer by nutritional therapy as not being performed in a "hospital” under policy’s definition *669 which required "hospital” to employ staff of physicians rendering medical, surgical and obstetrical care and 24-hour nursing services]; Malican v Blue Shield, 52 AD2d 190 [4th Dept 1976] [denying social psychiatric worker services as not covered since policy required service be rendered under physician’s orders]; Rosenthal v Metropolitan Life Ins. Co., 114 Misc 2d 332 [Civ Ct, NY County 1982] [denying nursing services performed by unlicensed practical nurse where policy required registered or licensed practical nurse]).
In the case of ambiguity in exclusionary terms, the principle of contra profenentum or strictly construing the policy against the insurer-drafter applies and the insurer must establish the "plain” meaning of the exclusion which is the only interpretation. (National Screen Serv. Corp. v United States Fid. & Guar. Co., 364 F2d 275, cert denied 385 US 958; Great N. Ins. Co. v Dayco Corp., 620 F Supp 346 [SD NY 1985].)
The standard of proof is what would a reasonably prudent nonlawyer person understand the disputed term to mean. In Miller v Continental Ins. Co. (40 NY2d 675 [1976]) the court found an accidental death provision did not specifically exclude death caused by a heroin overdose. The term accident was given a broader, rather than a narrow, technical, definition that a layman would use. If an exclusion is intended, then the insurer must make that intention clear by the use of clear, appropriate language (Miller v Continental Ins. Co., supra, at 678, citing Sperling v Great Am. Ins. Co., 7 NY2d 442; see also, Kennan v Equitable Life Assur. Socy., 59 Misc 2d 536 [Civ Ct, NY County 1969] [construing the term " 'equipment’ ” on a group health insurance contract to include an air conditioner]; Davidson v Aetna Life Ins. Co., 101 Misc 2d 1, 5 [Sup Ct, NY County 1979] [finding a sex reassignment operation was not within the "cosmetic surgery” exclusion based upon physician recommendation that surgery was imperative and necessary]; Mount Sinai Hosp. v Zorek, 50 Misc 2d 1037 [Civ Ct, NY County 1966] [hospitalization for nonexcluded disease, condition or injury, to wit: obesity, required payment by insurance company]).
The subject Plan defines "medically necessary” as "generally accepted medical standards as determined by Metropolitan” and excludes coverage for those services or supplies which are not medically necessary. The Plan also excludes some 19 other types of services and/or supplies, none of which apply to the plaintiff’s claim. Defendant having failed to provide a clear, specific, restrictive definition to cover the *670 instant situation has the burden of proving plaintiff’s claim is not medically necessary. (Neuwirth v Blue Cross & Blue Shield, 62 NY2d 718 [1984].) Plaintiff having submitted the only evidence which established the manual wheelchair was medically necessary is therefore entitled to recover.
Public policy considerations or arguments by the defendant cannot be proffered herein. Defendant failed to submit any evidence of the quasi-religious medical claims it would be subjected to and the plaintiffs recovery is based upon nonreligious grounds. Moreover, as the Miller court (supra) pointed out, the decedent’s violation of criminal laws by the possession of heroin did not render his death any less accidental, and punishment would not warrant forfeiture of the policy’s benefits on a vague unproven public policy argument.
Judgment for the plaintiff in the amount of $532 plus $5.25, the cost of commencing the action.

. Health Insurance For You and Your Dependents, NY State Govt *667 Employees Health Ins Plan, Dept of Civ Serv, Mario M. Cuomo, Gov., Karen S. Burstein, Commr., L, at 31.

. US Const 1st Amend; NY Const, art I, § 3.

. Despite the Plan’s citing the Governor, Commissioner, State of New York and the Department of Civil Service, there appears to be no direct State action.