OPINION OF THE COURT
Laura Jacobson, J.
Claimant brings this lawsuit against his insurance company seeking reimbursement for the cost of a special teacher, an expense claimant alleges is medically necessary.
*514 This is the second lawsuit I have presided over involving these parties. In 1991, claimant and his wife commenced a lawsuit against defendant and a coinsurer, seeking reimbursement of the cost of the services of the same special teacher. Claimant’s daughter, Elana Saxe, suffers from, inter alla, cortical visual impairment and requires the services of a professional who will provide visual motivation and attentiveness. In the first case (Saxe v Metropolitan Life Ins. Co., 152 Misc 2d 635) the defendants did not deny the extent of Elana’s illness. They did, however, refuse to pay the cost of a professional, licensed teacher who provided medically necessary visual therapy services for Elana. In that case, I found for claimants based on the fact that the Provider of the services had been approved by several doctors, as permitted by claimant’s health insurance contract.
Subsequently, defendant changed its contract to provide, inter alla, that covered medical expenses would only be reimbursed if the services were provided by a "Provider”. That term was defined as "any doctor, dentist, nurse, chiropractor, certified nurse midwife, optometrist, physical therapist, visiting nurse service, or facility legally licensed to perform a covered medical service; it also includes certified and registered social workers.”[1]
Apparently, it is claimed, the changes in the contract were published to all beneficiaries of the health insurance package.
Thereafter, claimant again filed for reimbursement of his claim for the cost of the special teacher, Linda Frankmolle, the visual therapist. This time, the defendant refused to pay the claim on the grounds that the new amendment precluded payment to any caregiver who was not an authorized Provider as set forth in the contract.
After the defendant denied claimant’s request for reimbursement of his daughter’s visual therapist, claimant wrote the defendants and requested that they supply him with the name of a "Provider” who like the current therapist, Ms. Frankmolle, could provide the services to his daughter that she medically needed and required. Claimant confirmed in his letter that his priority was obtaining quality care and services for his daughter. Defendant never responded to that inquiry.
*515 Claimant then initiated this lawsuit. This matter was referred to me based on my familiarity with the issues.
In June 1993, the parties and I conferenced this matter. After a discussion, it was agreed that each side would submit a memorandum of law setting forth their respective positions. After I reviewed those documents, I would render a decision unless I decided that some issue of fact would have to be dealt with initially. There are no issues of fact and after reviewing all of the written documents submitted by each side, I hereby decide in favor of the claimant for the following reasons:
As was noted above, after the first decision, defendant changed its contract. However, at no time did defendant exclude from coverage reimbursement for services rendered to someone suffering from, inter alla, cortical visual impairment. It is clear that claimant’s daughter suffers from this physical impairment and just as clear that the services she requires are medically necessary for her survival.[2]
Claimant, as a Justice of the Supreme Court, is entitled to subscribe to certain insurance benefits as an employee of the State of New York. However, those benefits are not free and the cost of the insurance is deducted from claimant’s biweekly salary check. As a paid subscriber, therefore, claimant is entitled to a certain basic quid pro quo from the insurer. It is illogical to think that a subscriber would contract for insurance which would not provide the kind of benefits he/she were looking to receive. After all, the subscription to insurance benefits is not mandatory and claimant could obtain his own insurance if the policy did not provide for the needs of claimant and his family.
In the instant case, defendant refused to pay for a medically required service unless that service was provided by one who falls into the category of "Provider”. Claimant requested that defendant provide him with the name of a "Provider” so that his daughter could receive the treatment that she medically needs and requires. Defendant cannot supply a Provider because one does not exist who would be covered by defendant’s *516 definition. Therefore, defendant has indirectly excluded coverage for the services claimant requires. An insurer is permitted to limit its liability and exclude coverage of certain conditions but the insurer must make that intention obvious by the use of clear, appropriate language. (Wachtel v Metropolitan Life Ins. Co., 141 Misc 2d 665 [1988], revd on other grounds 146 Misc 2d 670 [1990].) In this case, the defendant insurer has never said that medically necessary expenses required for the treatment of cortical visual impairment are excluded from the policy. In fact, on many occasions, the defendant has alluded to the fact that it would pay the claimant, if the services were provided by one who could be identified as a Provider. However, it is clear to all sides that the services medically required by claimant’s daughter can only be provided by a special education teacher who is specially trained to provide those visual therapy services. Moreover, defendant changed its contract after the first decision, as stated above. However, if it intended to exclude the services which are the basis of the instant claim, defendant must set forth that exclusion clearly and without any ambiguity. The insurance policy is strictly construed against the insurer-drafter. (National Screen Serv. Corp. v United States Fid. & Guar. Co., 364 F2d 275, cert denied 385 US 958; Great N. Ins. Co. v Dayco Corp., 620 F Supp 346 [SD NY 1985].) In the instant case, defendant is, in essence, attempting to exclude indirectly what it must do directly, by law. That exclusion attempt is ineffective in this case.
Accordingly, judgment is rendered to the claimant in the amount of $1,823 plus cost, disbursements and interest.

. Prior to September 1992, covered medical expenses were defined as: "the reasonable and customary charges for covered medical services performed or supplies prescribed by a doctor, except as otherwise provided, due to your sickness, injury or pregnancy. A Covered Medical Expense is incurred on the date the service or supply is received by You.”

. In one of defendant’s reply papers, there is a vague allusion to the fact that claimant has never substantiated the true extent of Elana Saxe’s illness. The defendant was offered the opportunity, during the initial conference, to have Elana examined by defendant’s doctors upon the defendant’s request. That request was not exercised. For defendant to now allude to the possibility that Elana’s illness and/or her need for the services has not been medically established is contrary to fact and is unwarranted. (See also, Saxe v Metropolitan Life Ins. Co., supra.)