# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3344

_____

Terry Sanders,                                 *

                      *

        Appellant,                *

                      *

    v.                             *   Appeal from the United States

                      *   District Court for the

May Department Stores Company,   *   Eastern District of Missouri.

                      *

        Appellee.              *

                      *

_____

Submitted: September 12, 2002

Filed: January 9, 2003

_____

Before HANSEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Terry Sanders ("Sanders") brought this employment action alleging that her former employer, the May Department Stores Company ("May"), violated the Family and Medical Leave Act ("FMLA"). Following trial, the jury entered a verdict in favor of May on all counts. Sanders appeals the District Court's[1] denial of her post-verdict motion. We affirm.

_____

[1] The Honorable Donald J. Stohr, United States District Court Judge for the Eastern District of Missouri.

I.

May hired Sanders as a financial analyst in October 1984. Sanders, then a male, worked productively at the company for nearly thirteen years until the spring of 1998. In March of that year, Sanders informed May that she suffered from gender dysphoria.[2] To address this condition, Sanders told May that she intended to undergo gender reassignment surgery on June 4, 1998. Moreover, following the surgery, Sanders would no longer consider herself a male, but a female.

Sanders also informed May that in order to prepare for this surgery, she was required to live as a woman for four to six weeks preceding the procedure. She expressed particular concern that some level of confidentiality be maintained during this pre-surgical lifestyle adjustment. In particular, she wanted to avoid workplace disclosure of her impending life change. Sanders especially emphasized that she did not desire this disclosure because of the adverse effect such disclosure might have on her spouse of twenty-five years. Consistent with her desire for privacy, Sanders tendered her resignation.

In stating her intent to resign, Sanders also acknowledged her understanding that if she did not resign prior to surgery, she could have received sick pay during convalescence. As consideration, she sought from the company what she described

---

[2] Gender dysphoria, also known as transexualism, has been defined as:

> The desire to live and be accepted as a member of the opposite sex, usually accompanied by the wish to make his or her body as congruent as possible with the preferred sex through surgery and hormone treatment.

Harry Benjamin Int'l Gender Dysphoria Assoc., *Standard of Care for Gender Identity Disorders* (6th ed. Feb. 2001) *available at* http://www.hbigda.org/socv6. pdf; *see also Davidson v. Aetna & Casualty Ins. Co.*, 420 N.Y.S.2d 450, 452 (N.Y. Sup. Ct. Trial Term 1979) (defining gender dysphoria).

as "due financial consideration" and a "leave of absence." Specifically, she wanted to cease reporting for duty in April, but continue as an employee through May 1, 1998. Sanders gave other personal grounds for this consideration.

In reply, May explained to Sanders that severance pay was not an option under company policy because her departure was voluntary. May also expressed concern at this time that Sanders was leaving a job she had held for more than thirteen years. Sanders stated that she understood, but that her decision was well-reasoned. She had plans to rendevous in another state with her future partner, who was going to provide and care for her during her recuperative period. Afterwards, they planned to marry and begin their life together in that state.

During this time, a representative of May's human resources office informed Sanders that she might qualify for FMLA leave. This representative also explained that in order to qualify for leave, the statute required Sanders to provide medical certification of the need for leave. Sanders reasserted her intent to resign and, because of her confidentiality concerns, stated that she did not want to provide the FMLA-required medical certification.

May's personal-leave policy allows an employee to receive up to one week of leave for each year of service, at May's discretion. After the leave expires, if the employee wishes to return to work, he or she may do so if there is a position available. Under its personal-leave policy, May is not obligated to hold the position open for the employee. As an employee of thirteen years, Sanders was eligible for, and received, thirteen weeks of personal leave. The leave expired at the end of July 1998.

In June 1998, during the leave period, Sanders underwent gender reassignment surgery. However, Sanders's personal plans apparently changed, and she sought reinstatement with May. May, however, had not reserved Sanders' previous position.

Nevertheless, May did rehire Sanders on February 16, 1999, to work as a Senior Financial Analyst in its MIS department. This position differed from the one she previously held for the company.

On April 30, 1999, May terminated Sanders for poor performance. As a result, in March 2000 Sanders filed this action against May seeking damages for its alleged violation of FMLA.

## II.

Sanders first appeals the denial of her post-trial "Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial."[3] In the motion, Sanders argued that: (1) the jury's verdict was contrary to the evidence presented at trial; (2) May did not satisfy its FMLA notice requirements; (3) she did not volitionally waive her FMLA rights; (4) she was entitled to a new trial based on her retaliation claim. In addition, Sanders appeals the District Court's refusal of several of her jury instructions. As discussed below, each of these arguments is without merit.

### A. Judgment as a Matter of Law or New Trial

Our review of a district court's denial of a motion for judgment as a matter of law is conducted de novo. We will evaluate all evidence and all reasonable inferences in the light most favorable to the prevailing party. *Moring v. Arkansas Dept. of Correction*, 243 F.3d 452, 455 (8th Cir. 2001); *Vetter v. Farmland Indus. Inc.,* 120 F.3d 749, 752 (8th Cir. 1997). We will not disturb a jury's verdict unless we determine that no reasonable juror could have found for the non-moving party based on the trial record. *Moring,* 243 F.3d at 455. We review the denial of a motion for a new trial for an  abuse of discretion. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481,

---

[3] Based on the substance of Sanders's argument, we conclude that she filed this motion seeking judgment as a matter of law, in spite of the title of the motion.

495 (8th Cir. 2002). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000) (citations omitted).

1.

Sanders first argued that the jury's finding was contrary to the evidence presented at trial. At trial, the jury found that May did not violate FMLA when it awarded her only personal leave instead of FMLA leave (in spite of her FMLA eligibility before her sexual reassignment surgery). An eligible employee, such as Sanders, may take FMLA leave for a period not to exceed twelve months "because of a serious health condition that makes the employee unable to perform the functions of his or her job." 29 U.S.C. § 2612(a)(1); *see also,* 29 C.F.R. §825.112(a). However, in order to invoke the protections of FMLA, an employee must notify his employer of his "intention to take leave." 29 U.S.C. §2612(e)(2)(B). At a minimum, an employee must give "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. §825.302(c). While the employee does not have to mention FMLA by name, the employee has an affirmative duty to indicate both the need and the reason for the leave. 29 C.F.R. §825.302(c). Thus, in evaluating the jury's verdict, we must first consider whether Sanders made a valid request for FMLA leave.

Sanders planned to have a sex change operation in June 1998. She notified May that she wanted to resign no later than May 1, 1998, in order to maintain a level of anonymity during the month prior to the operation. At that time, Sanders stated her intent clearly and articulated several factors supporting her decision. She: 1) feared ridicule from peers and colleagues; 2) anticipated impending trouble at the workplace from an ex-boyfriend; 3) believed that if she resigned her position prior to the surgery she would spare her spouse a measure of grief; 4) planned to move to another state with her future fiancee and begin life anew.

Also at the time of her resignation, Sanders requested severance pay noting that her departure prior to undergoing her scheduled surgical procedure would save May the expense of providing her with covered medical leave if she remained in its employ. Alternatively, Sanders requested that she be allowed to take a "leave of absence" during the month of April so that she would still accrue additional vacation leave until May 1, 1998. In response to Sanders dual request, May suggested that there was a "possibility" that she would qualify for FMLA leave.[4] Sanders refused because she would be required to supply the company with a medical certification delineating her qualifying health condition. Thus, it is plain from these facts that Sanders did not actually attempt to pursue FMLA leave. This refusal was consistent with her articulated desire for non-disclosure of her gender reassignment. Instead of FMLA leave, May granted Sanders thirteen weeks of personal leave (one week for each year of service), which allowed her to continue receiving corporate benefits including medical insurance and accrual of leave.

Sanders attempts to get around these facts. First, she argues that she provided May with sufficient notice of her need for FMLA leave because May acknowledged the possibility that her sexual reassignment would be an FMLA-qualifying event. However, such a conclusion is untenable; it ignores the fact that she dismissed the option outright. We hold May was not obligated to ignore Sanders's express resignation.

Second, Sanders also maintains that because May granted her personal leave, it cannot be said that she also resigned her position. However, there is no mutual exclusivity to the grant of a personal leave and a resignation. Sanders, herself, best makes this point. In a letter she authored in March 1998, Sanders informed one of her

---

[4] Because it is not essential to the resolution of the issues before us, we decline to address whether sexual reassignment qualifies as a serious-health condition under FMLA.

physicians that she would "be resigning" after a "leave of absense [sic]" and that she would be moving near her "boyfriend and future fiancee." She also noted in the letter that her "last day of work in the St. Louis area will be Thursday, April 23, 1998."

Therefore, because Sanders did not actually pursue FMLA leave, and in fact, expressly rejected it, we conclude that a reasonable jury could determine that Sanders failed to request FMLA leave. As a result, a reasonable jury could further conclude that May had not violated FMLA.

2.

Sanders next argues that the trial court erred when it refused to grant her a judgment as a matter of law on her claim that May did not satisfy its notice obligations under FMLA. Sanders relies on 29 C.F.R §825.301(c), which requires an employer to provide an employee with written notice. 29 C.F.R §825.301(c) (stating that an employer must provide an employee with written notice "no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave (if FMLA leave is taken during the six-month period)."). The notice must detail an employee's specific expectations and obligations under FMLA and explain any consequences of a failure to meet those obligations. *Id.*

Under §825.301(c) of the FMLA, the detailed employer written notice obligation Sanders cites arises only after an employee gives sufficient information to the employer to apprize it of the need for leave due to a serious health condition. If an employee gives insufficient or no notice of a serious health condition, §825.301(c) does not apply. If Sanders failed to properly notify her employer of her need for leave, her employer would be under no obligation to comply with the requirements of 29 C.F.R §825.301(c). May presented evidence at trial that Sanders had been informed of her FMLA rights. The notice required by 29 C.F.R. 825.300(a) had been posted in May's human resources offices since FMLA's inception. Moreover, Sanders acknowledged that she received a memorandum from May describing FMLA's

protections as well as her rights and obligations as an employee. Given these facts, we hold a rational jury could resolve this issue against Sanders, and the trial court did not err in refusing to grant judgment as a matter of law in her favor.

3.

Sanders next argues that the District Court erred when it denied her request for judgment as a matter of law on the issue of whether her decision to forego the FMLA leave option was volitional. She contends that May coerced her to waive her FMLA rights in a "trade-off" for personal leave under its policy. To buttress her argument, Sanders cites 29 C.F.R. §825.220(d). This section states that neither may employees "waive, nor may employers induce employees to waive, their rights under FMLA. For example, employees . . . cannot "trade-off" the right to take FMLA leave against some other benefit offered by the employer." *Id.* Sanders supports her argument with a May employee's deposition testimony. In it, the employee stated that she believed that Sanders chose personal leave over FMLA.

However, to the extent that Sanders "chose" personal leave, it was by forfeit. She was informed of the possibility of FMLA leave (and the accompanying medical certification requirement) and for understandable personal reasons, opted not to pursue the FMLA alternative. The record before us does not support Sanders's contention that May required her to "trade away" her FMLA rights. In finding otherwise, the trier of fact was justified. Accordingly, we affirm the District Court's denial of Sanders's request for judgment as a matter of law.

4.

Sanders also contends that the District Court should have granted her a new trial. Sanders argues that May fired her–from the second position she held at May–in retaliation for complaining that her FMLA rights had been violated in 1998. Sanders concedes that this claim rests on our disposition of her previous claims. The jury determined that May terminated Sanders from her second position based on poor

-8-

performance. The District Court refused to grant a new trial on that issue, and Sanders has not stated sufficient basis for this Court to conclude differently on appeal.

## B. Jury Instructions

Finally, Sanders argues that the District Court erred when it refused several of the jury instructions submitted at trial. We review the jury instructions given by a district court for an abuse of discretion. *See Brown v. Sandals Resorts Int'l*, 284 F.3d 949, 953 (8th Cir. 2002). "Our review is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Id.* (citations omitted). We will not reverse "unless we find that the error affected the substantial rights of the parties." *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 699 (8th Cir. 2001). Sanders alleges that because the instructions she submitted were not accepted, she did not receive a fair trial. We disagree and find no abuse of the District Court's discretion.

Instructions 1B, 2, and 5[5] required the trial court to make a determination that Sanders could not refuse FMLA leave. The evidence demonstrated that May told Sanders that she might qualify for FMLA leave. Sanders declined, stating that she wanted to resign. There is no legal requirement that an employer must give an employee FMLA leave after such an offer has been rejected. Because each of these

---

[5] The instructions read in their entirety:

Instruction 1B
You have heard testimony from Ron Antoniewicz that at a meeting with Plaintiff on March 16, 1998 [sic] he mentioned FMLA to Plaintiff and that Plaintiff immediately refused FMLA leave. Whether or not you believe such testimony from Ron Antoniewicz, I have decided that, under the applicable law, Defendant's obligations toward Plaintiff under FMLA, [sic] did not end because of Plaintiff's purported refusal of FMLA during the March 1998 meeting. I express no opinion, in this instruction, on any other issue in the case.

Instruction 2
You have heard testimony from Ron Antoniewicz that at a meeting with Plaintiff on March 16, 1998 [sic] he mentioned FMLA to Plaintiff and that Plaintiff immediately refused FMLA leave. You have heard testimony that Plaintiff "Chose" [sic] a personal leave over a FMLA leave. Whether or not you believe such testimony, I have decided that, under the applicable law, Plaintiff did not waive or give up any of Plaintiff's FMLA rights as a result of the alleged refusal of FMLA or choosing of the personal leave during the March 1998 meeting. I express no opinion, in this instruction, on any other issue in the case.

Instruction 5
You have heard testimony from Ron Antoniewicz that at a meeting with Plaintiff on March 16, 1998 [sic] he mentioned FMLA to Plaintiff and that Plaintiff immediately refused FMLA leave. Whether or not you believe such testimony from Ron Antoniewicz, I have decided that, under the applicable law, Plaintiff did not waive or give up any of Plaintiff's FMLA rights as a result of the alleged refusal of FMLA during the March 1998 meeting. I express no opinion, in this instruction, on any other issue in the case.

three instructions would, therefore, contain inaccurate declarations of the law, the District Court properly refused them.

Proposed Instruction 1A[6] asked the court to state that it had decided Sanders's second period of employment with May was not an "equivalent position." The effect of such an instruction would have caused the District Court to engage in fact-finding. That role is preserved for the members of the jury. As such, the District Court was correct to refuse it. Even if this was not the case, the record supports the conclusion that May's decision to rehire Sanders in 1999 was an independent event and was not a retroactive application of FMLA.

Instruction 4[7] also asked the trial court to engage in fact-finding. Specifically, Sanders asked for an instruction to the jury stating that she had given May sufficient notice of her desire to take FMLA leave in March of 1998. The adequacy of one's notice in the FMLA context is not a question of law, but rather a fact issue. *See Hopkins v. Quitman County Hosp. & Nursing Home, Inc.,* 126 F.3d 635, 640 (5th Cir. 1997) ("[I]t is our opinion that the adequacy of Hopson's notice is a fact issue."). Thus, the trial court properly refused to submit this instruction to the jury.

_____

[6] The instruction reads in its entirety:

Instruction 1A.
I have decided that Plaintiff's second period of employment with May Company, from February 1999 to April 1999, is not an "Equivalent Position" as defined in Instruction No. 19.

[7] The instruction reads in its entirety:

Instruction 4.
I have decided that on March 16, 1999, Plaintiff gave sufficient "Notice" (to May Company) of the need for FMLA leave for planned medical treatment. I express no opinion, in this instruction, on any other issue in the case.

-11-

Sanders's final argument is that the trial court failed to properly explain to the jury the following: after Sanders gave notice to May of the need for leave, May was required to give her written notice of her rights and obligations under FMLA. The verdict director, Instruction 14a, sets forth the elements of this count.[8] Furthermore, Instruction 14b goes on to state what an employer must tell an employee in order to adequately advise her of her rights. As a result, the verdict directors make clear that an employer's duty to advise an employee of her rights under FMLA must come after notification of the need for leave.[9] Therefore, we conclude that neither did the trial court abuse its discretion in refusing the instruction, nor did Sanders suffer any resulting prejudice from the instruction that was given. Moreover, to the extent that Sanders argues that the District Court's refusal to grant the requested instructions

---

[8] That: Sanders had to give notice of her intent to take a leave, she had to prove she had a serious health condition, May had to fail to adequately advise her of her rights and obligations, and because of May's failure to adequately advise her, she forfeited her FMLA rights.

[9] Notably, even if this instruction is incomplete, Sanders suffered no prejudice. There was sufficient evidence in the trial record that Sanders did not give notice of her intent to take a leave, she did not have a serious health condition when her leave commenced, and she was not damaged by not receiving any written notification of her rights after meeting with May officials in March 1998. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81(2002); 29 C.F.R. §825.112(a); 29 C.F.R. §825.302(c). Sanders did not want FMLA leave in March 1998 because she was afraid of others learning of her secret life and plans. When orally told of her leave options, she refused to provide the necessary documentation. Sanders's rabid desire for confidentiality did not change until months later. As Sanders suffered no prejudice, even if this instruction were incomplete, it was harmless error, not a basis for reversal of the verdict in this case. *Scamardo v. Scott County,* 189 F.3d 707, 711 (8th Cir. 1999).

inflamed and prejudiced the jury, her argument is unpersuasive. She offers no convincing argument on appeal to support such a contention.[10]

Accordingly, for the foregoing reasons, the decision of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[10] Finally, because we affirm the District Court on all points, we need not address whether Sanders's position at May after her rehiring constituted an equivalent position for purposes of the FMLA.