# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-1065/04-1066

_____

| | | |
|---|---|---|
| Michael Woods, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri |
| DaimlerChrysler Corporation, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: January 10, 2005
Filed: June 7, 2005

_____

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Michael Woods was terminated by DaimlerChrysler Corporation for unexcused absences from work, he filed this action alleging that his discharge violated the Family and Medical Leave Act (FMLA). DaimlerChrysler moved for summary judgment, contending that Woods had not established a prima facie case under the Act and that his claim was untimely under a clause in their employment agreement. Woods moved for partial summary judgment to strike the company's

contractual defense. The district court[1] granted both motions, and judgment was entered in favor of DaimlerChrysler. Both parties appeal. We affirm the judgment.

I.

In June 1999 Michael Woods was hired as an Industrial Engineering Supervisor at DaimlerChrysler's North Assembly Plant in Fenton, Missouri. After more than a year with the company, Woods was transferred to a lower ranked leader position in the assembly department and after that to Production Facilitator. This last transfer shifted him to evening hours; Woods viewed it as a demotion and conflict with his family life. Woods remained a Production Facilitator for the remainder of his employment with DaimlerChrysler, however, working first in the final assembly area and ultimately in the plant's trim department. He worked under a number of different supervisors; the last was Area Manager Sheila Franklin.

On Friday March 16, 2001, Sheila Franklin was working with some production facilitators to solve a problem with the assembly line when she noticed that Woods was not on the production floor. She subsequently saw him near his cubicle where Woods told her there had been nothing for him to do on the line. Franklin instructed him to assist another manager in a different part of the facility, but she learned later in the evening that he had not communicated with that manager and could not be located within the plant.

Woods does not dispute that on March 16 he left work without authorization four hours before the end of his shift. Under DaimlerChrysler Standards of Conduct, an employee's "[u]nexcused absence or tardiness from plant or workstation" constitutes grounds for discipline "up to and including discharge." Standard 3. An

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

employee is not to leave his "work station, office or plant during working hours without permission or fail[] to return to work after lunch or relief without permission," and can be discharged for noncompliance. Standard 4. Woods says the reason he left work in the middle of his shift on March 16 was that he did not have a work assignment and he knew other employees were being laid off. He admits that Franklin had ordered him to assist another manager, but he contends he was unable to locate that person or anyone else who could provide him work. He acknowledges that after the March 16 incident, the plant Operations Manager told him that another unauthorized departure during work hours would be grounds for termination.

Five weeks later on Friday April 20, Woods again left work without permission. He alleges that on that evening Franklin was overly demanding, expecting him to address numerous quality defects on the production line and pressing him to complete paperwork with over forty trim department employees. When she walked through his area and noticed pieces of cardboard lying on the production floor, Franklin asked why he had not removed the trash. Woods told her he had not seen it because he had been gathering employee signatures. Franklin responded that Woods would not likely have been able to see the cardboard from inside his cubicle.

Woods considered Franklin's remark "tremendously unfair and inappropriate" and he testified in his deposition in this lawsuit that he had to get "out of there because she had me so upset." He described his reaction to her comment in the same deposition:

> the lights went out and I felt like I was going to explode and either throttle her or have a heart attack or a stroke myself.... I just couldn't think straight. I was so upset.... I felt like I'd either throttle her or...hurt myself.

There is evidence that he deposited his radio in Franklin's office before leaving the plant and that he told several employees that he "couldn't take it anymore" and had

to leave or he would do something to Franklin. He did not seek permission to leave work from any supervisor, tell any manager he was leaving, or seek help at the plant's medical clinic.

Woods left approximately one and a half hours before the end of his shift, drove home, removed his contact lenses, and went to bed. He did not tell his wife about the incident that evening and he does not recall mentioning it to her over the weekend. He says he called his physician's office on Saturday but was unable to get an appointment until Monday afternoon, April 23. Woods recalls behaving normally over the weekend, and his wife apparently noticed nothing unusual. He says that by Monday he felt more depressed than anxious, "worried about what [he] needed to do or whether it was safe for [him] to go back to work."

On Monday, April 23, Woods left a voicemail message around 6:00 a.m. for Michele Wyatt, Human Resources (HR) Administration Supervisor, saying that he would be seeing a physician that afternoon. He saw Dr. Edward Heidbrier then and received a prescription for an antidepressant and anxiety medication. Although Woods apparently did not have the prescriptions filled, he did use some physician samples of the antidepressant. The doctor gave him a note which Woods mailed the next day; DaimlerChrysler records show it was received on April 30. The doctor's entire message was that "Mr. Woods has been advised to remain off of work pending further evaluation and treatment. He is to follow up with me in 1 week."

On Tuesday morning around 6:00 a.m., Woods left Wyatt a second brief voicemail message, reporting that he had seen his physician and would be mailing his note. Neither in this voicemail message nor the first did Woods give any information about what might be wrong with him or why he had been advised not to work. Wyatt nevertheless prepared a Salary Lost Time Report indicating that Woods would be absent on a "Disability Absence Plan" beginning April 23 for an "unknown" illness. The "return to work date" was left blank.

-4-

Senior HR Manager Ron Wander wrote to Woods about his absence on Tuesday April 24, the day of the second 6:00 a.m. voicemail. In this letter Wander told Woods:

> It is the employee's responsibility to follow DaimlerChrysler's Standards of Conduct. You were scheduled to work on Friday, April 20th and left the plant without permission. Your absence from the plant is unsubstantiated and unauthorized.
>
> You must report immediately to Michele Wyatt on or before Friday, April 27, 2001. Failure to do so shall result in disciplinary action up to and including discharge.

Woods received the letter on April 27, the day set by Wander as the deadline to report to Wyatt. Despite the letter's threat of discharge for noncompliance, Woods made no attempt to report to Wyatt as directed or to contact her about it. He says he thought he had already done enough by leaving the two voicemail messages and mailing the doctor note, but he did nothing to confirm that or to clarify what was expected of him.

On April 30 he wrote a letter to Wander saying that he had left work early on April 20 because he "was so stressed that I felt my health and well-being were at risk." He indicated he wanted to continue working for the company "in a role that is healthy and rewarding for myself, my family, and the corporation," but he did not indicate when he planned to resume work. Instead he said that he would "like to meet with the appropriate person(s) on the morning of Monday, May 7, 2001 to discuss my future with the corporation." He enclosed another copy of the previously forwarded note from Dr. Heidbrier, along with a second note from him dated April 30 which stated only that "Mr. Woods is advised to remain off work until 5/6/01." He also enclosed a March 28, 2001 note from Dr. Michael Borts, which had been written after Woods' first unexcused absence from work. In that note Dr. Borts said Woods suffered from chronic sinusitis and should avoid irritants such as cigarette smoke; it is not clear from the record whether this note had previously been submitted to the company.

Woods returned to the plant on May 7 for the first time after his early departure on April 20. He talked to HR Manager Ron Wander and Michele Wyatt, again recounting why he had left work but offering no substantiation for his excuse or documentation that his continued absence was due to a serious health condition. Wander then gave Woods a letter informing him that he was being suspended pending further investigation, for having left work on March 16 and April 20 without permission in violation of the company Standards of Conduct 3 and 4. Wander told Woods that he would be notified when the company had completed its inquiry into the matter.

Later that day, Woods wrote another letter to Wander. In this letter he said that he had left work on April 20 in a "state that precluded rational consideration of other options" and that the "same state of mental and physical distress prompted [his] physician to immediately prescribe medical treatment combined with time away from the workplace upon seeing him as early as his schedule permitted on Monday, April 23, 2001." He asked for "regular layoff benefits" if there were "no longer a position...in which [his] skills and values may be utilized."

Although Wander had informed Woods that the company would be conducting an investigation into his unauthorized absences during his suspension, Woods made no further attempt to substantiate his proffered excuse or to request FMLA leave. He never submitted a statement from a doctor identifying any type of medical treatment or physical or mental health condition which required his absence from work or made him unable to perform the functions of his job.

On May 18 Ron Wander wrote to Woods again, this time informing him that DaimlerChrysler's investigation had been completed and that his suspension was "being changed to a discharge effective today," for violation of Standards of Conduct 3 and 4. Wander also enclosed a statement of benefits and told Woods he must turn in his leased vehicle and other company property.

Woods engaged an attorney who wrote to Wander on June 1, alleging that his client had been discharged in violation of the FMLA but seeking an "amicable resolution." On July 13 counsel wrote again to indicate Woods would file suit unless he were contacted about settlement. The company indicated on August 7 that it would look into the case and respond again in one week. One month later DaimlerChrysler said it had not yet evaluated the matter, and Woods' attorney left a message on October 5 again threatening litigation. Corporate counsel responded on October 8 that Woods' termination might be converted to an involuntary layoff with the benefits of that status and sent information the next day regarding layoff benefits. Counsel for Woods responded by letters on October 22 and November 13 and by phone on January 7, 2002. Then on January 25, DaimlerChrysler requested specific documentation regarding Woods' period of employment, his compensation and benefits, and any health care payments he had made. The letter indicated that the company might agree to change his separation code and reinstate his health care benefits to May 2001, but the author did not have the "impression that payment was being considered in settlement." Woods' lawyer did not respond.

## II.

New counsel was later retained by Woods, and this action was filed on June 6, 2002. In his complaint Woods alleged that from April 20, 2001 to May 7, 2001 he had suffered from a serious health condition making him unable to perform the functions of his position and that DaimlerChrysler's failure to restore him to his former position or its equivalent on May 7 violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654. He sought lost wages and benefits with interest, liquidated damages, fees and costs, but he did not request reinstatement.

DaimlerChrysler moved for summary judgment, arguing that Woods' claim was barred by a clause in their employment agreement. That clause states that any claim arising from employment must be filed "no more than six...months after the date of

the employment action that is the subject of the claim or lawsuit." The district court denied the motion on the grounds that the company was estopped from asserting the clause as a defense because it had engaged in settlement discussions about Woods' claim for more than six months after his termination. DaimlerChrysler's motion for reconsideration and its petition to this court for writ of mandamus were denied.

After further development of the case, DaimlerChrysler filed another motion for summary judgment and Woods moved for partial summary judgment. DaimlerChrysler asserted that Woods had never requested FMLA leave, that he had not suffered from a serious health condition, and that he had produced no evidence that he was terminated for attempting to obtain FMLA leave. It again raised the six month clause in the employment agreement, and Woods in turn sought dismissal of that defense. Woods argued both that the company was estopped from asserting the clause as a defense because it had engaged him in settlement discussions beyond the six month period and that the clause was unenforceable under the FMLA.

The district court granted the motions. In granting Woods' motion, it referenced its earlier ruling that DaimlerChrysler was estopped from raising the contractual limitations defense and also concluded that the limitations clause impermissibly interfered with employee rights under the FMLA. In support of the latter conclusion it cited federal regulations. See 29 C.F.R. § 825.220(a)(1) (employers "prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act."); id. § 825.220(d) ("Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA.").

In ruling on DaimlerChrysler's motion, the court observed that although the FMLA entitles employees to medical leave for serious health conditions, it requires that they give employers adequate notice of their need for leave. The court concluded that Woods had failed to give the company adequate notice of a need for FMLA

leave. He had never informed it of any medical problem and gave no indication that he was having a medical emergency before leaving on April 20. Despite having been warned about unauthorized absences after the March 16 incident, he made no attempt to contact the company during the weekend following his departure and failed to request leave in his April 23 voicemail.

Both parties appeal. Woods contends that it was reasonable for him to leave the plant on April 20 without permission from his supervisor because he was in an irrational state but that he did speak with two other employees supervised by Sheila Franklin. Woods asserts that the phone messages he left for Michele Wyatt on the first and second business days after his unauthorized absence were timely and adequately informed the company that he needed FMLA leave. He also points to the two notes from Dr. Heidbrier and his own letter to Wander on April 30. In response to DaimlerChrysler's cross appeal, Woods argues that the contractual limitations clause impermissibly interferes with FMLA rights, that Missouri prohibits parties from shortening statutory limitations periods by contract, and that DaimlerChrysler is estopped from relying on the clause because it engaged in settlement discussions beyond the six month filing period set by the employment agreement.

DaimlerChrysler maintains that Woods was terminated for his unauthorized absences in violation of company standards of conduct, not because he requested medical leave. It points out that he had been warned after his first unexcused absence on March 16 that he would face discharge if it were to happen again. It also argues that Woods failed to give it sufficient notice that he wanted FMLA leave. It asserts that it would have been practicable for Woods to tell Franklin on April 20 that he needed leave while he was speaking with her. He had the presence of mind at that time to tell her why he had not picked up the cardboard, to return paperwork to her, to gather his things and deposit his radio in her office, to talk with several other employees, to drive home, and to remove his contacts before going to bed. DaimlerChrysler argues that Woods has also not shown he was unable to provide

some kind of notice during the following weekend, and that his voicemail messages for Wyatt did not contain sufficient information to put it on notice that he needed FMLA leave. Moreover, Woods has not shown he suffered from a qualifying serious health condition. In its cross appeal, DaimlerChrysler argues that the contractual limitations clause does not impermissibly interfere with Woods' substantive rights under the FMLA and that his estoppel claim should fail because he has not shown affirmative misconduct by the company.

III.

We review a grant of summary judgment de novo. Gentry v. Georgia-Pac. Co., 250 F.3d 646, 649 (8th Cir. 2001). Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Smith v. Ashland, Inc., 250 F.3d 1167, 1171 (8th Cir. 2001). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may affirm the district court's grant of summary judgment on any ground supported by the record. Gamradt v. Federal Laboratories, Inc., 380 F.3d 416, 419 (8th Cir. 2004).

Under the FMLA a covered employee may have up to twelve weeks of leave during any twelve month period if the employee is suffering from a "serious health condition" which makes him "unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.114(a)(2)(i). A serious health condition is one which requires "inpatient care in a hospital, hospice, or residential medical care facility" or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). The continuing treatment test for a serious health condition is met if an employee is incapacitated by "an illness, injury, impairment, or physical or mental condition" for

more than three consecutive days and for which he is treated by a health care provider on two or more occasions. 29 C.F.R. § 825.114(a)(2)(i).

In enacting the FMLA Congress did not intend to cover leave for "short-term conditions for which treatment and recovery are very brief." See Martyszenko v. Safeway, Inc., 120 F.3d 120, 123 (8th Cir. 1997) (quoting S.Rep. No. 103-3, at 28 (1993)). Only absences "attributable to...serious health conditions" are protected. Spangler v. Federal Home Loan Bank of Des Moines, 278 F.3d 847, 853 (8th Cir. 2002). Examples of conditions which would ordinarily not be covered include "the common cold, the flu, ear aches, upset stomach, minor ulcers, [and] headaches other than migraine." 29 C.F.R. § 825.114(c).

In order to benefit from the protections of the statute, an employee must provide his employer with enough information to show that he may need FMLA leave. Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000) (quoting Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999)); 29 C.F.R. §§ 825.302(c), 825.303(b). Although the employee need not name the statute, Thorson, 205 F.3d at 381, he must provide information to suggest that his health condition could be serious. Collins v. NTN-Bower Corp., 272 F.3d 1006, 1009 (7th Cir. 2001). Employees thus have an "affirmative duty to indicate both the need and the reason for the leave," and must let employers know when they anticipate returning to their position. Sanders v. May Dep't Stores Co., 315 F.3d 940, 944 (8th Cir. 2003); 29 C.F.R. § 825.302(c).

The FMLA also requires that an employee's notice be timely in order for his leave to be covered by the Act. The statute demands "such notice as is practicable" unless the need for medical leave is foreseeable, when thirty days advance notice must be given. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.303(a). As soon as practicable means "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). At a

minimum, notice is to be given within "one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." Id. § 825.303(a).

A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave, and an employer has the right to request supporting information from the employee. See Carter v. Ford Motor Co., 121 F.3d 1146, 1148 (8th Cir. 1997). One example of inadequate notice can be seen in Carter. After the plaintiff made two phone calls saying he was out "sick," his employer wrote him a letter ordering him to report for work or justify his absence within five days or face discharge. 121 F.3d at 1147. At the expiration of the five day period the plaintiff was terminated because he had not supplied further justification and had only requested "sick leave," entitling his employer to summary judgment because it had been offered insufficient information about why the plaintiff was absent and when he would return to work. Id. at 1147-48. Similarly in Collins, an employee with a "spotty attendance record" was discharged after being absent for two days and calling in "sick." 272 F.3d at 1007. Summary judgment for the employer was proper since only after initiating litigation had the plaintiff explained that she had needed leave due to clinical depression. Id. at 1008. The message that she was sick was inadequate notice because it offered no information to suggest that she was suffering from a serious health condition or when she would "return to work." Id. at 1008-09.

Because the FMLA was intended to permit "reasonable leave for medical reasons...in a manner that accommodates the legitimate interests of employers," 29 U.S.C. § 2601(b)(2)-(3), employers are entitled to require absent employees to furnish reports on their "status and intention...to return to work" and verification of an employee's claimed need for medical leave. Id. §§ 2613, 2614(a)(5). They may require certification from a health care provider that "the employee is unable to

perform the functions of [his] position" and will remain unable to work for an estimated period of time due to specific "medical facts." Id. § 2613(b).

Employees who show they qualify for FMLA leave are entitled to be restored to their positions or the equivalent upon returning to work. 29 U.S.C. § 2614(a)(1). Employees who fail to comply with legitimate reporting requirements set by their employers are not entitled to reinstatement, however, id. § 2614(a)(5), nor are employees who were subject to discharge for reasons other than their requests for FMLA leave. Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977-78 (8th Cir. 2005) (citing 29 U.S.C. § 2614(a)(3)(B)).

IV.

In this case the district court granted summary judgment to DaimlerChrysler on the grounds that Woods had not shown that he gave adequate and timely notice that he needed FMLA leave. In analyzing that issue the district court focused on whether it was possible or practical for Woods to have given notice before he left work on April 20 and whether his voicemail message on April 23 was sufficient notice. We need not narrow our focus to that limited time period on our de novo review of the record, however, because DaimlerChrysler gave Woods further opportunity to provide substantiation for his unauthorized absence.

DaimlerChrysler did not deny Woods FMLA leave or discharge him after his initial communications. Instead, Michele Wyatt prepared a report indicating that he was absent due to an unknown illness and HR Manager Ron Wander wrote him a letter indicating that his absence was regarded as unsubstantiated and that he should report immediately about it. If he wanted FMLA leave, Woods had the responsibility to give notice "as soon as both possible and practical" that a serious health condition caused his absence. Sanders, 315 F.3d at 944 (employee must "indicate both the need and the reason for the leave"); Collins, 272 F.3d at 1009 (employee must provide

-13-

information suggesting his condition is serious); 29 C.F.R. §§ 825.302(b)-(c), 825.303(b). DaimlerChrysler was entitled under the FMLA to seek further information with specific medical facts and verification of its employee's request for leave. See 29 U.S.C. §§ 2613(a), 2614(a)(5).

Wander's April 24 letter was sent after Woods had left his two 6:00 a.m. voicemail messages stating that he was seeing a doctor and would be forwarding his note. In his letter Wander cited Woods' "unsubstantiated and unauthorized" absence from work on April 20 and his responsibility to conform to the company Standards of Conduct, and he also ordered Woods to report to Wyatt by April 27. Even though Woods received the letter by the reporting deadline, he did not contact Michele Wyatt and never provided substantiation of a need for FMLA qualifying leave. Woods took no immediate action to supplement his abbreviated voicemail messages or the initial doctor note which only mentioned "evaluation and treatment."

Woods chose to respond by writing Wander on April 30 to say he had left work ten days before because he was stressed and felt his health was at risk, but he provided no information to indicate that his absence was due to a serious health condition. He also failed to say when he would return to his position, if at all, but only that he would like to discuss a "healthy and rewarding" role at the company. See Collins, 272 F.3d at 1009 (employers must be notified "when a given employee will return to work"); 29 C.F.R. § 825.302(c) (notice of leave's timing and duration required). The enclosed second note from Dr. Heidbrier merely stated that Woods had been "advised to remain off work until 5/6/01," again offering no diagnosis and no mention of a serious health condition making him "unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D).

During his appearance at the plant on May 7, Woods offered no additional information or substantiation to show his absence was because of a serious health condition making him unable to work. Even though he was given a letter on May 7

-14-

informing him that he was "being suspended immediately until further investigation" and that his continued employment turned on the outcome of that investigation, Woods failed to provide more information or verification about any serious health condition up to the time of his discharge on May 18. Although his doctor later testified in a deposition that he had "felt [Woods] was having a sort of an anxiety reaction state or anxious depression that was probably related to, or culminated with the stress at work," no such statement was furnished to DaimlerChrysler while Woods was employed there. The record shows that Woods was able to communicate with DaimlerChrysler during his absence and to twice visit a doctor, but that he has not produced evidence that he gave adequate or timely notice to his employer of a need for FMLA leave. See 29 C.F.R. § 825.303(a) (notice must be given to the employer "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case").

Woods' failure to submit adequate information to his employer to indicate he had a qualifying medical condition distinguishes his claim from the cases on which he relies. In Stekloff v. St. John's Mercy Health Systems, 218 F.3d 858 (8th Cir. 2000), another employee upset with her supervisor left work, but before she departed she told her supervisor that she was too distraught to remain, contacted her doctor who gave her a note recommending that she not return to work for two weeks, and left that note in her supervisor's mailbox. Id. at 859. Her employer gave her no notice that it considered her absence unsubstantiated before discharging her. Id. In contrast, Woods left work without any notice to his supervisor and later failed to substantiate that he suffered from a serious health condition after being given an opportunity to do so. Unlike the situation in Spangler, where the employer had "ample knowledge" that the plaintiff suffered from depression and had previously had medical leave, 278 F.3d at 852-53, DaimlerChrysler had no knowledge of any serious health condition suffered by Woods. It was aware, however, that he had been absent without permission or explanation twice in a five week period.

Thorson is another FMLA case cited by Woods, but it does not support his position. As we pointed out there, that employer might have been entitled to summary judgment "had it availed itself of the protections provided" by the FMLA. 205 F.3d at 382. These protections include the right of employers to request a medical diagnosis from a health care provider, a statement that the employee is unable to perform the functions required by the job, and information about the duration of the employee's absence. Id. at 381. In contrast to the employer in Thorson, DaimlerChrysler did avail itself of its statutory rights by demanding substantiation and reporting from Woods in its April 24 letter.

Cases in which plaintiffs failed to make out an FMLA case for lack of adequate and timely notice are instructive here. Similar to the notes submitted by the unsuccessful plaintiff in Bailey,172 F.3d at 1042-46, the doctor notes furnished by Woods did not specify any serious health condition preventing him from performing his work or the duration of his absence, and Woods presented no evidence that it would have been impracticable to provide more detailed information after he was notified by DaimlerChrysler that his absence was unsubstantiated. The notes Woods submitted merely said he was advised to remain off work without saying why and only referred to unspecified evaluation and treatment. Like the employee in Carter, 121 F.3d at 1147-48, Woods failed to comply with the employer's expressed need for information substantiating his absence and never informed DaimlerChrysler of any diagnosis of anxiety and depression. Woods is also like the employee in Collins, who did not provide her employer with information "imply[ing] a 'serious health condition'" or an indication of when he would return to work. See 272 F.3d at 1008.

Woods admits that DaimlerChrysler gave him notice after his March 16, 2001 unauthorized absence from work that he could be discharged if it occurred again. Nonetheless, on April 20, 2001 he again left before the end of his shift without notice or permission. Although he was given time to substantiate that he needed FMLA leave, he never submitted any verification that he had a serious health condition

making him unable to perform the functions of his job. We conclude that Woods has failed to make out a prima facie case under the FMLA and that he has failed to make a showing that he was discharged for requesting FMLA leave rather than for his employer's stated reason (absence from work on March 16 and April 20 without authorization in violation of Standards of Conduct 3 and 4). See Throneberry, 403 F.3d at 977-78 (permissible for employer to discharge for cause an employee entitled to FMLA leave).

For these reasons the district court did not err in granting summary judgment to DaimlerChrysler, and we need not address the issues relating to the contractual limitations clause. Accordingly, the judgment in favor of DaimlerChrysler is affirmed.

_____