# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-4038

———————

Zuhdija Napreljac,                  *

                               *

    Plaintiff - Appellant,      *

                               *   Appeal from the United States

  v.                         *   District Court for the

                               *   Southern District of Iowa.

John Q. Hammons Hotels, Inc.,   *

                               *

    Defendant - Appellee.     *

———————

Submitted:  June 15, 2007
Filed:  October 10, 2007

———————

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

———————

LOKEN, Chief Judge.

Zhudija Napreljac sued his former employer, John Q. Hammons Hotels, Inc. (Hammons), alleging that he was wrongfully terminated as a hotel maintenance engineer for falsely reporting a workplace injury. The district court[1] granted Hammons's motion for summary judgment. Napreljac v. John Q. Hammons Hotels, Inc., 461 F. Supp. 2d 981 (S.D. Iowa 2006). Napreljac appeals the dismissal of two claims, an Iowa common law retaliatory discharge claim for exercising his statutory right to workers' compensation benefits, and a claim of disability discrimination under

---

[1]The HONORABLE JAMES E. GRITZNER, United States District Judge for the Southern District of Iowa.

the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a).  Reviewing the grant of summary judgment *de novo* and the summary judgment record in the light most favorable to Napreljac, the non-moving party, we affirm.

## I.  Background

Napreljac began working for Hammons in September 2000.  In January 2002, he received workers' compensation benefits for neck surgery after he reported an injury lifting wet carpet.  He returned to work subject to temporary job restrictions that ended in March 2003.  In August 2003, three days after a supervisor criticized Napreljac's failure to complete his work, he complained about back problems and work overload and then reported a back injury from moving a television.  He again received workers' compensation benefits for medical treatment, and a physician placed him on temporary work restrictions.  Napreljac was assigned light duty, primarily folding towels in the laundry and picking up garbage on the hotel grounds.

On the morning of September 18, 2003, while picking up garbage near the east loading dock, Napreljac told supervisor Scott Johnston that his back was bothering him.  Later that morning, after reporting to the laundry to fold towels, Napreljac told supervisor Kevin Beaver that he (Napreljac) had slipped and fallen on the stairs near a loading dock that morning.  Beaver related what Napreljac told him to Human Resources Manager Jayne Schmeling.  At the request of Shannon Kaufman, the hotel's General Manager, Beaver and Johnston documented these conversations later that day.  Napreljac denies telling Beaver that he fell on the stairs.

Beaver and two human resources employees (Schmeling and Jane Postier) accompanied Napreljac to the stairs in question and asked him to demonstrate what happened.  Napreljac said he was picking up trash on the stairs and took a step that made his back hurt. Schmeling prepared an accident/investigation report stating that Napreljac had injured himself while "walking down the steps picking up garbage,"

and listing the time of the accident as 8:30 a.m. The document appears to be signed by Napreljac below the description of the injury, but he denies having signed it. Meanwhile, Kaufman began reviewing tapes from a security camera pointed at the stairs in question.

Hammons reported Napreljac's injury to its workers' compensation provider, and Napreljac went to see a doctor. The doctor's notes from this visit stated: "Today while going down steps and picking up garbage with a stick, [Napreljac] stepped with R foot and felt extreme pain in R mid low back radiating to both legs." The doctor diagnosed a mild lumbar strain, placed Napreljac on tighter temporary work restrictions, and reported that he could return to work the following day.

Later that day, Kaufman discussed the investigation with Schmeling and Postier, reviewed the doctor's notes, and was told by Johnston that Napreljac had not mentioned an incident on the stairs when they spoke at 8:45 that morning. Kaufman testified that the video did not show Napreljac on the stairs at 8:30 a.m., the time noted on the accident/investigation report, and did not show him picking up litter on the stairs at any point that morning. The video provided no support for the claim that Napreljac hurt himself going down the stairs, as Kaufman saw no sign of injury when Napreljac did appear on the video walking down the stairs.

After giving Napreljac an opportunity to confirm or change what he said had happened, Kaufman suspended him without pay pending further investigation. Kaufman terminated Napreljac six days later. The Notice of Termination explained that "falsification or alteration of company records is just cause for immediate dismissal" and an investigation proved, contrary to Napreljac's signed accident report, that he "was not injured while picking up litter on said date of 9-18-03 [at] said time of 8:30 a.m." Following his termination, Napreljac accepted a job at another hotel, where his activities included replacing drywall. When deposed in February 2006, Napreljac held a job that included lifting boxes of medicine.

-3-

## II. Workers' Compensation Retaliation

Napreljac first argues that the district court erred in dismissing his claim of retaliatory discharge. Iowa common law provides a cause of action for an at-will employee who is discharged contrary to public policy, which includes being discharged "due to the filing of a workers' compensation claim." Springer v. Weeks & Leo Co., 429 N.W.2d 558, 560 (Iowa 1988). To recover damages, the employee must prove that he was discharged in retaliation for engaging in protected activity. The Supreme Court of Iowa has not attempted to define protected activity in this context, other than to describe it generally as "asserting statutory workers' compensation rights." Springer v. Weeks & Leo Co., 475 N.W.2d 630, 633 (Iowa 1991). Thus, one issue is whether Napreljac engaged in protected activity when he falsely reported to Hammons that he had suffered a workplace injury that might give rise to a workers' compensation claim.

The Supreme Court of Iowa has applied this retaliation doctrine in a number of cases. In most, the protected activity was clear, as plaintiff had actually filed a claim for workers' compensation benefits. See, e.g., Sanford v. Meadow Gold Dairies, Inc., 534 N.W.2d 410, 412 (Iowa 1995). The Court in these cases generally defined the tort as requiring the filing of a claim, but in other cases it has not limited the universe of protected activities to employees who filed claims. For example, in Niblo v. Parr Mfg., Inc., 445 N.W.2d 351, 353 (Iowa 1989), the Court affirmed a verdict in favor of a plaintiff who was discharged for merely *threatening* to file a claim.

On the other hand, expressing concern with "the specter of a proliferation of common-law suits in an area largely preempted . . . by workers' compensation procedures," the Supreme Court of Iowa held in Below v. Skarr, 569 N.W.2d 510, 512 (Iowa 1997), that "claimed harassment of a worker, including threatened termination, does not give rise to a claim at common law." See also Yockey v. State, 540 N.W.2d 418, 421-22 (Iowa 1995) (questioning whether termination for excessive absences

occasioned by work-related injuries would violate this public policy doctrine). Given the Court's obvious reluctance to expand this public policy exception to the law of at-will employment, we do not believe the tort extends to all situations in which an employee reports an injury that would be covered by workers' compensation and the employer takes action "intended to interfere with the employee's workers' compensation rights." Hansen v. Sioux By-Products, 988 F. Supp. 1255, 1267 (N.D. Iowa 1997). In our view, this formulation is far broader than the Supreme Court of Iowa has approved.

In this case, Napreljac was receiving workers' compensation benefits and was working under temporary restrictions for a prior back injury when he reported aggravating that injury at work. Hammons sent him to a workers' compensation provider for diagnosis and possible treatment. Hammons also investigated the alleged injury, concluded Napreljac had lied, and terminated him. Whether Napreljac engaged in protected activity is open to serious doubt. Without question, reporting a workplace injury to the employer is the first step in pursuing a workers' compensation remedy. But *falsely* reporting an injury is not the exercise of a right protected by the workers' compensation statute. In some circumstances, for example, where the fact of injury is undisputed but the cause of the injury is not, the issue should be left to the workers' compensation claim process, not to the employer's unilateral determination that the claim of compensable injury is "false." But that issue is not implicated here.

Like the district court, we conclude that we need not resolve this protected activity issue because Napreljac failed to prove retaliation -- that his alleged protected activity caused the termination. See 461 F. Supp. 2d at 1033-37. "The causation standard in a common-law retaliatory discharge case is high. The employee's engagement in protected conduct must be the *determinative* factor in the employer's decision to take adverse action against the employee." Teachout v. Forest City Cmty. Sch. Dist., 584 N.W.2d 296, 301 (Iowa 1998) (citation omitted). Here, Hammons provided workers' compensation benefits and accommodated Napreljac's injuries and

workplace restrictions for several years.  Compare Fogel v. Trustees of Iowa Coll., 446 N.W.2d 451, 455 (Iowa 1989).  Hammons's decision-maker, hotel General Manager Kaufman, thoroughly investigated the alleged injury, uncovered numerous grounds for disbelieving Napreljac's injury report, and terminated him for submitting a false report.  We reject the contention that terminating an employee for *falsely* reporting an injury constitutes retaliation for the exercise of workers' compensation rights protected by Iowa public policy.  Therefore, we agree with the district court that Napreljac failed to present evidence sufficient to satisfy the causation element of his prima facie case.  In addition, he presented no evidence showing that the legitimate reason Kaufman gave for the discharge was pretextual.

### III.  Disability Discrimination

Napreljac next argues that the district court erred in dismissing his disability discrimination claim under the ADA, which provides that it is unlawful for a "covered entity [to] discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a).  "To prove disability discrimination, an employee must show that (1) [he] is disabled within the meaning of the ADA; (2) [he] is qualified (with or without reasonable accommodation) to perform the essential functions of a job; and (3) [he] suffered an adverse employment action because of the disability."  Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005).

The district court concluded that Napreljac failed to show he has "a physical or mental impairment that substantially limits one or more . . . major life activities," 42 U.S.C. § 12102(2)(A); therefore, he is not "disabled" within the meaning of the ADA. 461 F. Supp. 2d at 1012-19.  Napreljac argued that he was substantially limited in the major life activity of working, but the court concluded that his work restrictions were temporary and did not prevent him from continuing to work with those restrictions or from finding comparable employment at another hotel after his termination.  After a careful review of the record, we agree.  "Ability to do another job of the same general

-6-

class is inconsistent with a substantial limitation on the major life activity of working." <u>Nuzum v. Ozark Auto. Distribs., Inc.</u>, 432 F.3d 839, 848 (8th Cir. 2005). Because Napreljac's failure to prove he was disabled is fatal to his ADA claim, we need not consider the district court's alternative rulings that Napreljac failed to show that he was terminated because of a disability and that Hammons's proffered legitimate nondiscriminatory reason for the termination was a pretext for unlawful disability discrimination. 461 F. Supp. 2d at 1020-26.

The judgment of the district court is affirmed.

_____