Jennifer M. BUMGARNER, n/k/a Jennifer M. Love, Plaintiff,

v.

GRAFCO INDUSTRIES, LP, Defendant.

No. 3:07–cv–00016–JEG.

United States District Court, S.D. Iowa, Davenport Division.

Oct. 7, 2008.

Mary Leanne Tyler, Tyler & Associates, Davenport, IA, for Plaintiff.

Martha L. Shaff, Amanda Mestan Richards, Betty Neuman & McMahon, LLP, Davenport, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on a Motion for Summary Judgment brought by Defendant Grafco Industries, LP (Grafco), which Plaintiff Jennifer Bumgarner (Bumgarner)[1] resists. The Court held a hearing on the Motion on September 11, 2008. Attorney M. Leanne Tyler repre-

sented Bumgarner, and Attorney Martha Shaff represented Grafco. The matter is now fully submitted and ready for disposition.

## I. BACKGROUND

On a motion for summary judgment, the Court must view the evidence "in the light most favorable to the nonmoving party." *Shanklin v. Fitzgerald,* 397 F.3d 596, 602 (8th Cir.2005) (quotation omitted). The nonmoving party "may not rely merely on allegations or denials in [the nonmoving party's] own pleading; rather, [the nonmoving party's] response must—by affidavits or as otherwise provided [in Rule 56]—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

### A. Bumgarner's Injury and Treatment

On June 28, 2006, Bumgarner was working at Grafco's factory in Davenport, Iowa, when she hit her head on a machine while bending over to move some bottles. She received a two centimeter laceration on her forehead and was referred to Grafco's retained company physician, Dr. Camilla Frederick (Dr. Frederick). Dr. Frederick applied seven stitches to close the wound and noted that Bumgarner had suffered closed head trauma and was complaining of having a headache. Dr. Frederick told Bumgarner to take Tylenol to alleviate her headache, advised her of the possible complications that could arise from a closed head trauma, and encouraged her to tell someone at home if she exhibited any symptoms that would indicate a complication. If such symptoms occurred, Dr. Frederick instructed Bumgarner to have someone take Bumgarner back to the clin-

---

**1.** Plaintiff is now known as Jennifer Love but for consistency in the record is identified herein as Jennifer Bumgarner.

ic, or alternatively to the emergency room if the clinic was closed.

Dr. Frederick placed Bumgarner on light duty, including a ten-pound lifting restriction, for the remainder of June 28, 2006. Dr. Frederick then released Bumgarner to full work duty beginning June 29, 2006. Bumgarner made a follow-up appointment with a nurse for June 30, 2006, and scheduled a final appointment with the doctor on July 6, 2008, to have the stitches removed. Dr. Frederick did not certify Bumgarner for FMLA leave "because she was capable of doing work." Def.App. 58, dep. 58–59.

### B. Bumgarner's Return to Work and Subsequent Departure

After her visit with Dr. Frederick, Bumgarner returned to Grafco and completed her shift. She arrived for her shift on June 29, 2006, and was placed on regular work duty. During her shift, Bumgarner began to feel ill and told her supervisor, "Look, I'm going home. I don't feel good. I'm sick. My head hurts. I feel dizzy and want to go home and lie down." (*Id.* at 20, dep. 40). She did not make any request for medical attention, nor did her supervisors offer to send her back to the clinic.[2] As Bumgarner left, her supervisor warned her that if she left work, she would "point out" under Grafco's system for preventing employee absenteeism and consequently be terminated. When Bumgarner left, she neither called Dr. Frederick nor sought any other medical attention that night.

### C. Grafco's Attendance Policy/Point System

Grafco uses a point system attendance policy. Under this system, if an employee missed a day of work, the employee was assessed one point. If an employee missed a day of work without calling in to alert supervisors, two points were assessed. If an employee was late to work or left work before the end of a shift, the employee was assessed one half point. If an employee went for an entire calendar month without receiving any points, the employee would have one point deducted from the total; however, the total could never drop below zero.

Employees who incur six points under the policy are subject to termination. Grafco made Bumgarner aware of this policy when she started working and had her sign a written copy of the attendance expectations form. As of May 9, 2006, Bumgarner had 5.5 attendance points,[3] and Grafco consequently sent her a written warning regarding her absenteeism. Grafco did not assess Bumgarner any points or otherwise penalize her for missing work to receive treatment for her head injury on June 28, 2006. Grafco did assess Bumgarner one half point for her early departure from work on June 29, 2006. As she had already approached the brink with her prior accumulation of 5.5 points under the company policy, that action took her to the termination level.

2. Plaintiff argues that since the evidence indicates the Defendant had been made aware of the physician's cautionary instructions, the Defendant's personnel was under some obligation to act as Plaintiff's advocate, even in the absence of Plaintiff's own expressed concern or attempt to obtain medical care, when she complained of difficulty on June 29. However, the Court discerns no connection between that argument and the core issues of the current motion.

3. In her response to Grafco's statement of undisputed material facts (as well as in her lengthy appendix of "Additional Undisputed Material Facts"), Bumgarner claims that Grafco's records were inaccurate and/or poorly kept and appears to contest that she had accumulated 5.5 points as of May 9, 2006. See Pl. Resp. to Def. SUMF ¶¶ 12–16, 43. This is not a material issue, since Bumgarner admitted in her deposition that she had accumulated 5.5 points as of that date.

### D. Bumgarner's Termination and Subsequent Actions

On the morning of June 30, 2006, Bumgarner's supervisor called Bumgarner at home to inform her that Grafco was terminating Bumgarner for having six points in violation of the company's attendance policy. Later that morning, Bumgarner went to her follow-up appointment with Dr. Frederick's nurse, who recorded that Bumgarner's stitches were intact and that she showed no signs or symptoms. One week later, Bumgarner met Dr. Frederick to have her stitches removed, at which time Dr. Frederick noted that Bumgarner was finished with her care and had no impairment.

On March 5, 2007, Bumgarner filed this action against Grafco, alleging a violation of the Family Medical Leave Act (FMLA) and bringing state-law claims of retaliatory discharge in violation of Iowa public policy for exercising her rights under the FMLA and Iowa Workers' Compensation Laws. Grafco moves for summary judgment, arguing that Bumgarner cannot maintain these claims because she was not eligible for protection under the FMLA and that Grafco terminated her for a reason unrelated to her exercise of rights under either the FMLA or Iowa Workers' Compensation Laws.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Thomas v. Corwin,* 483 F.3d 516, 526–27 (8th Cir.2007). Rather, the Court focuses "on whether a genuine issue of material fact exists for trial—an issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Morris v. City of Chillicothe,* 512 F.3d 1013, 1018 (8th Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ While it is common to recognize that "[s]ummary judgment should seldom be granted in discrimination cases," *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1099 (8th Cir.2000), still, in discrimination cases, the plaintiff is not entitled to survive summary judgment merely by establishing a prima facie case. *Reich v. Hoy Shoe Co., Inc.,* 32 F.3d 361, 365 (8th Cir.1994) (citing *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir.1989)). The "plaintiff's evidence must be sufficient to raise a genuine issue of material fact regarding defendant's reason for the employment action taken." *Id.; see also Berg v. Norand Corp.,* 169 F.3d 1140, 1144 (8th Cir.1999) ("There is no 'discrimination case exception' to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial.").

The party seeking summary judgment initially bears the burden of demonstrating the absence of any genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the moving party satisfies its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(c), (e); *Celotex Corp.,* 477

U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "The mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. The substantive law determines what facts are material; "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Family Medical Leave Act Claim

Bumgarner alleges that by assigning her one half point for her early departure on June 29, 2006, Grafco violated her rights under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601. Grafco moves for summary judgment on the basis that Bumgarner's injury did not qualify her for FMLA leave, as it did not meet the FMLA's requirements of a "serious health condition." *See Beal v. Rubbermaid Commercial Prods.,* 972 F.Supp. 1216, 1222–24 (N.D.Iowa 1997) (finding that several plaintiffs' medical ailments failed to qualify as "serious health conditions" under the Act).

The FMLA provides in relevant part that,

an eligible [4] employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . . :

(D) Because of a serious health condition that makes the employee unable

to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).

The FMLA defines a "serious health condition" as any physical or mental condition that involves inpatient care or continuing treatment by a health care provider. *Id.* § 2611. The regulations relevant to the FMLA further define a serious heath condition as,

(i) A period of incapacity (i.e. inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom) *of more than three consecutive calendar days, and any subsequent treatment* or period of incapacity relating to the same condition, *that also involves:*

(A) *Treatment two or more times* by a health care provider.

29 C.F.R. § 825.114 (emphasis added). The Eighth Circuit Court of Appeals has applied these regulations and found that "the continuing treatment test for a serious health condition is met if the employee is incapacitated by an illness, injury, impairment, or physical or mental condition for more than three consecutive days and for which he is treated by a health care provider on two or more occasions." *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.2005).

A covered employer [5] who interferes with, restrains, or denies exercise of any right to leave under the FMLA is liable and is subject to a claim for compensatory damages and, unless the Court finds the violation occurred in good faith, additional liquidated damages. 29 U.S.C.

---

4. Bumgarner qualifies as an eligible employee as Grafco has employed her for over twelve months and for at least 1250 hours of service during the preceding year. 29 C.F.R. § 825.110.

5. Grafco is regulated by the FMLA as a business that employs fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 C.F.R. § 825.104.

§§ 2615(a)(1), 2617(a)(1)(A); 29 C.F.R. § 825.220(c). The regulations specifically provide that FMLA leave time cannot be counted under a "no-fault" attendance policy. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(c). The relevant issue, therefore, is whether Bumgarner's condition, viewed as she alleges it to be, qualifies for protection under the FMLA.

■ Having reviewed the applicable law, the Court is compelled to conclude Bumgarner's relatively minor head injury is not the type of injury that Congress had in mind when it enacted the FMLA.[6] *See Woods,* 409 F.3d at 990 ("[In] enacting the FMLA Congress did not intend to cover leave for short-term conditions for which treatment and recovery are very brief."); *see also* S.Rep. No. 103–3, at 26–27 (1993), U.S.Code Cong. & Admin.News 3, 28–29 (listing several conditions that Congress thought would qualify, including "heart attacks," "most cancers," "strokes," and "injuries caused by *severe* accidents on or off the job") (emphasis added).

Nor does Bumgarner's head injury meet the continuing treatment test put forth by the Eighth Circuit in *Woods v. Daimler-Chrysler Corp.. Woods,* 409 F.3d at 990. The first part of the test stipulates that the employee must be "incapacitated by an illness, injury, impairment, or physical or mental condition for more than three consecutive days." *Id.* The regulations define incapacity as an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom." 29 C.F.R. § 825.114. Dr. Frederick found that Bumgarner was able to work (albeit on light duty) for the duration of her shift on June 28, 2006, and could return to normal duty on June 29, 2006. The record shows that on June 28 Bumgarner worked on light duty, and on June 29 she worked almost the entire day on full duty without any restrictions.

Bumgarner has not submitted any evidence indicating that she was incapacitated for three consecutive calendar days, and therefore her head injury fails to qualify as a serious health condition under the FMLA. Because there is no genuine issue of material fact that Bumgarner did not qualify under the FMLA, the claim has failed as a matter of law to demonstrate that Grafco unfairly or illegally violated Bumgarner's rights under the FMLA in any respect. Therefore, Grafco is entitled to summary judgment on this claim.

**C. Retaliatory Discharge for Pursuing Rights Under FMLA**

■ Bumgarner also claims that she was wrongfully terminated for pursuing her rights under the FMLA. Her Complaint seemingly asserts this as a state law claim in violation of the public policy of the State of Iowa. However, as this Court has previously held, the FMLA's remedy for retaliation preempts any state law wrongful-discharge claims. *See Lucht v. Encompass Corp.,* 491 F.Supp.2d 856, 866–67 (S.D.Iowa 2007). Rather than to resolve the matter on the basis of a pleading failure, and given the inescapable outcome under the proper analysis, the Court proceeds as though Plaintiff has asserted this claim under federal law.

■ The FMLA "prohibits employers from discriminating or retaliating against an employee for asserting her rights under the Act." *Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 865 (8th Cir.2006). An "employer may not consider an employee's use of

---

**6.** Plaintiff argues the seriousness of the injury can be measured by the potential dangers of closed head trauma, as cautioned by Dr. Frederick. However, fortunately for Plaintiff's well-being though less helpful to her claim, no injury of that nature was ever diagnosed.

FMLA leave as a negative factor in an employment action." *Id.*

█ The Plaintiff bears the ultimate burden of proving that FMLA leave was the determinative factor in the negative employment action. *See* 29 U.S.C. § 2615(a)(2); *see also* S.Rep. No. 103–3 at 34 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 796, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under the *McDonnell Douglas* burden-shifting analysis, the employee must "establish a prima facie case of retaliatory discrimination by showing that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817.[7]

█ It is undisputed that Bumgarner suffered an adverse employment action when Grafco terminated her on June 29. However, Bumgarner is unable to show she exercised rights under the FMLA. Her claim also fails for lack of a causal connection between any exercise of FMLA rights and Grafco's adverse employment action.

█ First, Bumgarner's claim fails the *McDonnell Douglas* analysis because she cannot establish that she exercised rights afforded to her by the FMLA. For the reasons described above, Bumgarner's head injury was not a "serious health condition" that could qualify her for leave under the FMLA. Second, even if Bumgarner could show that she exercised FMLA rights, she cannot show that any such exercise was causally connected to Grafco's

decision to terminate her. To "establish a causal link between the employee's exercise of FMLA rights and her termination, the employee must prove that an employer's retaliatory motive played a part in the adverse employment action." *Hite,* 446 F.3d at 865.

█ At no time during the events surrounding her injury and termination did Bumgarner ever make an affirmative representation that she was seeking FMLA protection. Bumgarner correctly points out that failure to mention the FMLA does not necessarily bar an employee from qualifying for FMLA leave. *See Sanders v. May Dep't Stores Co.,* 315 F.3d 940, 944 (8th Cir.2003). However, while Bumgarner's failure to give Grafco notice might not be relevant in deciding whether she is entitled to FMLA leave, it sheds light on the issue of whether Grafco terminated her for seeking FMLA leave. If Grafco was not aware of Bumgarner's intention to seek FMLA leave, Grafco could not have terminated her for exercising her rights thereunder.

Furthermore, Grafco's attendance policy demonstrates that Grafco did not terminate Bumgarner on the basis of any exercise of FMLA rights. Attendance policies such as Grafco's are expressly implemented in order to eliminate discriminatory terminations. *See, e.g., Price v. S–B Power Tool,* 75 F.3d 362, 365–66 (8th Cir.1996) (finding that an employee's violation of an established attendance policy was a valid, nondiscriminatory reason for discharge). A point system creates an objective basis for termination and avoids allowing supervisors to make subjective termination de-

---

**7.** There are two ways for a plaintiff to establish a prima facie case of FMLA discrimination: (1) through direct evidence of discrimination, or (2) by presenting circumstantial evidence of discriminatory intent. *See, e.g., Beal,* 972 F.Supp. at 1229 (quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081

(11th Cir.1990)). "Only the most blatant remarks, whose intent could be nothing other than to discriminate … constitute direct evidence of discrimination." *Id.* Because Bumgarner does not allege that Grafco made any such remarks, she cannot establish a prima facie case via direct evidence.

cisions. By reading, agreeing to, and signing Grafco's attendance policy, Bumgarner acknowledged that if she accumulated six attendance points she would be terminated. By the date of her accident, Bumgarner had accumulated 5.5 points, the highest amount possible before becoming subject to termination. She had been warned about her absenteeism and was reminded again on June 29 that if she left early, it would bring her to six attendance points. When Bumgarner left, Grafco followed its attendance policy and terminated her.

On June 28, Grafco willingly gave Bumgarner time off to seek medical attention for her head wound. On June 29, however, Bumgarner did not seek medical attention or even mention her FMLA rights, much less use them as a threat that could have prompted her supervisors at Grafco into a retaliatory termination. The record shows that Grafco terminated Bumgarner for violating its attendance policy and not because she attempted to assert rights under the FMLA.[8]

Therefore, since Bumgarner is unable to establish either that she had a right to request FMLA leave or that there is a genuine factual issue regarding a causal connection between her attempted exercise of FMLA rights and her termination, Grafco is entitled to summary judgment on Bumgarner's retaliation claim.

### D. Retaliatory Discharge for Pursuing Workers' Compensation Benefits

■■■ Bumgarner's final claim is that Grafco discharged her in retaliation for pursuing workers' compensation benefits.

Iowa courts recognize a cause of action for common-law retaliatory discharge. *See Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 688 (Iowa 1990). Iowa common law "provides a cause of action for an at will employee who is discharged contrary to public policy, which includes being discharged due to the filing of a workers' compensation claim." *Napreljac v. John Q. Hammons Hotels, Inc.,* 505 F.3d 800, 802 (8th Cir.2007).

■■■ In Iowa, the three elements of a claim of discharge in violation of public policy are (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal connection between the two. *See Gaston v. The Restaurant Company,* 260 F.Supp.2d 742, 758 (N.D.Iowa 2003).

■■■ First, the employee must prove she was engaged in a protected activity. *Napreljac,* 505 F.3d at 802. The "Supreme Court of Iowa has not attempted to define protected activity in this context, other than to describe it generally as asserting statutory workers' compensation rights." *Id.* However, the employee must *assert* a right in such a manner that it puts the employer on notice of the employee's desire to seek workers' compensation; the mere ability to make a claim or existence of a right is insufficient without more. *See Niblo v. Parr Mfg. Inc.,* 445 N.W.2d 351, 353 (Iowa 1989) (finding that the employee must intend or threaten to file a workers' compensation claim); *see also Hansen v. Sioux By–Products,* 988 F.Supp. 1255, 1267 (N.D.Iowa 1997) (holding that an employee's conduct is protected if it alerts the employer to the employee's desire for

---

**8.** As noted in Section D of this Order, at p. 1062, Plaintiff seeks to establish an ill-motive on the part of the Defendant by arguing co-employees were offended that her injury had damaged their safety record and denied them a bonus. However, even if the Court assumes such a motivation on the part of co-employees, rather than supporting a causal connection to an exercise of rights under the FMLA, it suggests a wholly independent basis for the adverse employment action.

workers' compensation for a work-related injury); *Fogel v. Trs. of Iowa Coll.,* 446 N.W.2d 451, 454–55 (Iowa 1989) (finding that an employee must give his employer "reason to believe a workers' compensation claim [is] contemplated").

■ Bumgarner relies upon *Hansen v. Sioux By–Products* for the proposition that suffering an injury, reporting it to an employer, and seeking subsequent medical attention is enough to constitute a protected activity. Pl. Resp. 28. Though those events qualify the employee to seek workers' compensation, to "engage[ ] in a protected activity" the employee must go farther by taking an action that would put the employer on notice that the employee intended or at least threatened to file a workers' compensation claim. *See, e.g., Niblo,* 445 N.W.2d at 353; *Hansen,* 988 F.Supp. at 1267; *Fogel,* 446 N.W.2d at 454–55.

■ Here, Bumgarner simply suffered a relatively minor injury at work—she did not engage in a protected activity because she did not assert a right to workers' compensation, threaten to do so, or otherwise act in a manner that would alert Grafco that she might seek workers' compensation. The record does not contain evidence that Bumgarner ever filed a workers' compensation claim; similarly, it reflects no statements to Grafco either before or after her termination that showed Bumgarner's intent or threat to file a claim. Nothing in the record suggests that Grafco was or should have been aware that Bumgarner intended to or threatened to seek workers' compensation benefits for her relatively minor injury. Consequently, Bumgarner fails to demonstrate that she engaged in a protected activity.

■ Bumgarner is equally unable on this record to meet her burden of showing causation. The "causation standard in a common-law retaliatory discharge case is high." *Napreljac,* 505 F.3d at 803. To prove causation in a claim for retaliatory discharge, the employee must show that the protected conduct—i.e., filing a workers' compensation claim or pursuing workers compensation benefits—caused the employer to terminate his employment. *See Gaston,* 260 F.Supp.2d at 759. Additionally, the "protected conduct must be the determinative factor in the decision to terminate the employee." *Id.* at 759. A "factor is determinative if it is the reason that tips the scales decisively one way or the other even if it is not the predominant reason behind the employer's decision." *Id.* The Iowa Supreme Court has held that "an essential element of the claim is a showing concerning the employer's specific motivation in firing; it must appear that the discharge was prompted by the [protected activity]." *Sanford v. Meadow Gold Dairies, Inc.,* 534 N.W.2d 410, 412 (Iowa 1995).

As discussed above, Grafco asserts that it terminated Bumgarner on the basis of her violation of Grafco's employee attendance policy. Bumgarner has not submitted any evidence that could support a finding that Grafco terminated her on the basis of a claim for workers' compensation. Bumgarner made no request for medical attention on June 29, neither did she seek any further medical attention related to her head injury other than the prescheduled, routine follow-up appointments with Dr. Frederick and her nurse.

Bumgarner claims she was actually terminated because her injury caused the other employees in the factory to lose their accident-free record and the bonus they would have otherwise been awarded. However, Bumgarner was not terminated at the time her injury broke the accident-free record; the record was broken on June 28, the day she injured her head, but she was not fired until the morning of

June 30 after she had left work early the day before.

Bumgarner also asserts that the temporal proximity between her injury and her termination should satisfy the causation element. While such proximity can be a factor weighing in favor of finding causation, in the absence of other evidence, temporal proximity is "insufficient to establish a prima facie case of retaliatory discharge." *Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1002–03 (8th Cir. 2006). Bumgarner has not produced evidence—other than temporal proximity—to show that any factor beyond her early departure from work "tip[ped] the scales" in Grafco's determination to terminate her. *See Gaston*, 260 F.Supp.2d at 759. Consequently, Bumgarner cannot satisfy the causation element of her wrongful discharge claim.

Therefore, Bumgarner has failed to generate a material issue of fact that Grafco's termination was in retaliation for her pursuit of workers' compensation claims, and Grafco is entitled to summary judgment on this count as well.

## III. CONCLUSION

Viewing the evidence in the light most favorable to Bumgarner, and in the absence of any genuine issues of material fact, Bumgarner's claims of FMLA violations and retaliatory discharge for pursuing rights under the FMLA and workers' compensation statutes fail as a matter of law. Therefore, Grafco's Motion for Summary Judgment (Clerk's No. 16) must be **granted** as to all claims. Bumgarner's case is hereby **dismissed.** The Clerk is directed to enter judgment for the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**