**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2620
_____

CHRISTINA ADENIKE GARDINER,
Appellant

v.

CITY OF PHILADELPHIA; MICHEL WASHINGTON

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cv-00904)
Magistrate Judge:  Hon. Marilyn Heffley
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 27, 2020

Before: JORDAN, RESTREPO, and FUENTES, *Circuit Judges*.

(Filed April 23, 2020)

_____

OPINION[**]
_____

FUENTES, *Circuit Judge*.

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Christina Adenike Gardiner appeals the Magistrate Judge's grant of summary judgment in favor of the City of Philadelphia and Michel Washington. Gardiner, a former project manager for the City, alleged that the City and Washington terminated her employment in retaliation for taking leave under the Family and Medical Leave Act.[1] For the following reasons, we will affirm.

## I. Background

Gardiner worked as a program manager for the City's Office of Innovation and Technology from November 2013 until her termination on February 24, 2017. Her responsibilities included "basic IT" project management, including the management of the City's "Office 365 Project."[2]

In August 2016, Washington became Gardiner's immediate supervisor. Soon thereafter, Washington began to closely monitor Gardiner's work performance, including her management of the Office 365 Project. According to Gardiner, Washington became "nitpicky," began to question her educational and personal background, and began to "micromanag[e]" her work.[3]

In late December 2016, Gardiner began to complain of high blood pressure and sought medical advice. She was advised to take a few days off of work, and used her sick

---

[1] 29 U.S.C. § 2615(a)(2); *see* 29 C.F.R. § 825.220(c) (prohibiting employers from "discriminating or retaliating against an employee or prospective employee for having exercised or attempt[ing] to exercise FMLA rights.").
[2] J.A. 80, 86-90.
[3] J.A. 92-94.

2

time to cover the leave and "get some rest."[4] She returned to work in early January 2017 but, that same month, became sick with the flu and was out sick for another couple of days.

Throughout this time, Washington continued to express frustration over Gardiner's work performance. When Gardiner returned to work, she was "shocked" to learn that she was scheduled to lead a meeting for then-Chief Innovation Officer Charles Brennan on the status of the Office 365 Project.[5] Because she was not prepared to lead the meeting, Washington did so instead. Unsurprisingly, the meeting did not go well. Brennan described the meeting as "an absolute disaster" and stated that Gardiner "seemed to be completely unprepared" and "couldn't answer any questions."[6] After continued discussions as to Gardiner's work performance, Washington sent Gardiner an email describing her "overall attitude" as "indifferent, aloof and uncommitted" and urging Plaintiff to "show positive changes immediately."[7]

On the morning of February 22, 2017, Gardiner again consulted her doctor and "explained . . . her . . . situation."[8] She scheduled an appointment for approximately a week later, and her doctor suggested she take sick leave in the interim. That same day, Gardiner sent Washington the following email: "With me being in a stressful work environment and having other medical issues, my doctor wants me to take sick leave for a few days. I am hoping to return back to work sometime next week."[9]

---

[4] J.A. 103-05.
[5] J.A. 109-111.
[6] J.A. 174.
[7] J.A. 174, 196.
[8] J.A. 127; 123-24.
[9] J.A. 280.

The "stressful work environment" referred to Gardiner's relationship with Washington and the "other medical issues" referred to feelings of depression, anxiety, and stress.[10]  Gardiner did not identify these mental health conditions in her email nor was she medically diagnosed with these conditions.

On February 24, 2017, Gardiner received a letter from the City dated February 23, 2017, terminating her employment for poor performance.

Gardiner then filed suit, alleging, *inter alia*, that the City and Washington terminated her employment in retaliation for seeking leave under the FMLA.[11]  The Magistrate Judge granted summary judgment for the City and Washington.[12]  The court concluded that Gardiner failed to establish a *prima facie* case of FMLA retaliation because she failed to proffer sufficient evidence to show that she invoked her right to FMLA-qualifying leave. This appeal followed.

## II.  Standard of Review[13]

We review the Magistrate Judge's grant of summary judgment *de novo*, making all reasonable inferences in favor of the nonmoving party.[14]  Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party

---

[10] J.A. 127-28.

[11] Gardiner originally brought a claim under the American with Disabilities Act, an interference claim under the FMLA, and a claim under the Pennsylvania Human Relations Act.  However, Gardiner expressly abandoned those claims and proceeded solely with her claim for retaliation under the FMLA.

[12] The parties consented to the jurisdiction of a Magistrate Judge for all pretrial and trial proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).

[13] The District Court had federal question jurisdiction over Gardiner's claims under 28 U.S.C. § 1331.  We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

[14] *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013).

is entitled to judgment as a matter of law,[15] and we may affirm the grant of summary judgment on any basis supported by the record.[16]

### III. Discussion

Gardiner argues that her February 22, 2017 email to Washington was sufficient to raise a triable issue of fact as to whether Defendants were on notice that she was invoking her right to FMLA-qualifying leave. We disagree.

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must prove that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."[17] Because FMLA claims are assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*,[18] the plaintiff has the initial burden to "point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of her retaliation claim: (a) invocation of an FMLA right, (b) termination, and (c) causation."[19]

"To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave."[20] The relevant regulations provide that "[a]n employee giving notice of the need for FMLA leave . . . would need to state a qualifying

---

[15] Fed. R. Civ. P. 56(a).

[16] *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 751 (3d Cir. 2019).

[17] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012).

[18] 411 U.S. 792, 802-03 (1973).

[19] *Lichenstein*, 691 F.3d at 302.

[20] *Id.* at 303 (citing 29 U.S.C. § 2612(e)(2)).

reason for the needed leave."[21]  To provide notice, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."[22]  However, "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the [FMLA]."[23]

Further, we have clarified that an employee need not "provide every detail necessary for the employer to verify if the FMLA applies."[24]  Nor is it necessary for an employee to cite to the FMLA if she has "provided [her] employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA."[25]  Ultimately, "the 'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'"[26]  While this is generally a question of fact for the jury, "[t]here are cases . . . where the undisputed facts are such that 'no rational trier of fact could conclude' that the employee's notice was adequate."[27]

Gardiner's February 22, 2017 email did not constitute adequate notice under the FMLA as a matter of law.  The email only conveyed to Washington that Gardiner's doctor suggested she take "sick leave" for a few days because of a "stressful work environment"

---

[21] 29 C.F.R. § 825.301(b).
[22] *Id.* at § 825.303(b).
[23] *Id.*
[24] *Lichenstein*, 691 F.3d at 303.
[25] *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007).
[26] *Lichtenstein*, 691 F.3d at 303 (quoting *Sarnowski*, 510 F.3d at 402).
[27] *Id.* at 303 n.14.

and "other medical issues" and that she hoped to return to work the following week.[28] Gardiner did not identify the "other medical issues" in the email, nor did she advise Washington of what these medical issues were. Instead, it was later learned that the "other medical issues" referred to Gardiner's self-diagnoses of depression, anxiety, and stress, for which she never received a diagnosis or any treatment.[29] Further, Gardiner failed to discuss her medical issues or her request for sick leave with the City's human resources department. As such, there was nothing in the February 22 email that put Washington or the City on notice that Gardiner would be out on FMLA-qualifying leave.

In addition, there is no evidence in the record that Washington was aware of a previous medical condition, which would have allowed an inference that Gardiner's February 22, 2017 email referred to leave for an FMLA-qualifying reason. Gardiner took a couple of days of sick leave in December 2016 to "get some rest" and "get [herself] together."[30] She subsequently took sick leave in January 2017 as she recovered from the flu. Neither of these previous requests for sick leave were sufficient to put Washington or the City on notice that her February 22 email requesting leave was for an FMLA-qualifying reason.

Further, Gardiner testified that she intended to take sick leave, which she had already accrued, before seeing her doctor on February 28, 2017, and planned to go on vacation soon thereafter. Indeed, she further testified that the purpose of her doctor's visit

---

[28] J.A. 280.
[29] J.A. 127, 128.
[30] J.A. 103-05.

7

was to "make sure [she] was okay."[31]  Nothing in the record suggests that Gardiner or any of her supervisors understood that she was on leave for an FMLA-qualifying reason, as opposed to merely on accrued sick leave.

Under the facts of this case, Gardiner's vague reference to "other medical issues" and temporary absence from work were insufficient to provide Washington or the City with adequate notice that she was invoking her right to FMLA-qualifying leave.[32]  As a result, there can be no genuine issue of material fact, and the City and Washington are entitled to summary judgment.[33]

## IV.  Conclusion

---

[31] J.A. 133.

[32] *See Lichtenstein*, 691 F.3d at 305 n.16 (noting that a "vague, generic reference to a 'hospital' in which the likelihood of a serious health condition is merely conceivable" is likely not adequate notice under the FMLA and thus "not sufficiently likely to warrant shifting the burden of inquiry onto the employer"); *see also Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725-26 (7th Cir. 2007) (holding that the employee's general request for sick leave was insufficient to satisfy the FMLA's notice requirement because the employee was obligated to tell her employer something more "than that she was out sick for a day"); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 993 (8th Cir. 2005) (finding the employee's notice inadequate as a matter of law where the employee submitted two doctor's notes stating that employee was "advised to remain off work" because the notes did not mention the nature of the illness).

[33] On appeal, Gardiner urges us to adopt a "perception theory" of liability under the FMLA. Appellant's Br. 20.  Contrary to Gardiner's suggestion that her "Complaint and summary judgment answer can be read to include a claim of 'perception theory' retaliation," Gardiner did not raise this argument before the Magistrate Judge.  Appellant's Reply 4. Therefore, Gardiner has forfeited this argument on appeal.  *See Barna v. Bd. of Sch. Dirs. of Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) ("[W]e will not reach a forfeited issue in civil cases absent truly 'exceptional circumstances.'" (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001))).  In any event, we have never applied a "perception theory" of liability under the FMLA and would decline to do so in this case.

For the foregoing reasons, we affirm the Magistrate Judge's grant of summary judgment.